56 N.J. Super. 567 (1959)
153 A.2d 393
THE BOARD OF EDUCATION OF THE BOROUGH OF PALMYRA IN THE COUNTY OF BURLINGTON, STATE OF NEW JERSEY, PLAINTIFF,
v.
DARYL LEE HANSEN AND RUSSELL CLAYTON HANSEN AND SOPHIA HANSEN, PARENTS OF DARYL LEE HANSEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 2, 1959.
*569 Messrs. Parker, McCay & Criscuolo, attorneys for the plaintiff.
Messrs. Dimon, Haines & Bunting, attorneys for the defendants.
McGANN, J.C.C.
This matter comes before the court on a motion by the defendants for a summary judgment in favor of the defendants Clayton Hansen and Sophia Hansen, parents of Daryl Lee Hansen, to dismiss the second and third counts of the plaintiff's complaint on the grounds that (a) the statutory provision on which the plaintiff relies does not apply to the facts of this case; (b) that the statute on which the school board relies is unconstitutional because the title of the act, of which it is a part, fails to express the objective of imposing absolute liability on parents for the torts of their children as required by Art. IV, Sec. VII, par. 4 of the New Jersey Constitution; and (c) that the statute in question is unconstitutional under both the New Jersey and Federal Constitutions because it deprives parents of property without due process of law.
The defendant Daryl Lee Hansen, son of Russell Clayton Hansen and Sophia Hansen, all defendants in this action, and one George Lehman, were enrolled as students at Palmyra High School in the Fall semester of 1957. On Sunday night, December 8, 1957, Hansen and Lehman went to the high school building for the alleged purpose of securing examination papers. While there it is charged that the defendant Daryl Lee Hansen set fire to the school. As a *570 result of the fire, the high school was damaged to the extent of $344,000.
Consequently, the plaintiff board of education brought this action against Daryl Lee Hansen, alleging that the fire was caused by reason of his negligence. His parents were joined as defendants by reason of the provisions of R.S. 18:14-51 which provides as follows:
"Any pupil who shall cut, deface, or otherwise injure any schoolhouse, furniture, fences, outbuildings, or other property of the school district shall be liable to suspension and punishment, and his parents or guardian shall be liable for damages to the amount of the injury to be collected by the board of education in any court having jurisdiction, together with the costs of the action."
Counsel for the parents argues that the language of the statute implies that the liability is only applicable where the student violates school property, or otherwise injures it, during school hours. He goes on to point out that the statutory provision in question dates back to 1867 and formerly had in it the phrase "on complaint of the teacher." These words were omitted in subsequent enactments of the statute. Counsel relies on the case of Lamro Independent Consolidated School District No. 20 of Tripp County v. Cawthrone, 73 N.W.2d 337 (S.D. Sup. Ct. 1955). In that case the court dismissed the action against the parents solely because the act provided that parents were responsible "on the complaint of the teacher." S.D.C. 15.3009. The latter phrase indicates that the alleged injury would have to be one occurring while the pupil was in the presence of the teacher or under her supervision, and thus if the pupil were not under the supervision and authority of the teacher, there could be no liability.
The New Jersey statute omits this phrase "on complaint of the teacher," and, therefore, it is reasonable to assume that the New Jersey Legislature did not intend to so restrict or qualify the liability of the parents. Statutes should be interpreted by giving the words used therein their usual and ordinary meaning. See the cases of Lane v. Holderman, *571 23 N.J. 304, 313 (1957); Jamouneau v. Harner, 16 N.J. 500 (1954).
It is also argued that this statute is in derogation of common law and, therefore, should be construed strictly. This is so. However, public schools are not a common-law institution. They are a statutory creation, and it follows that if the Legislature has the right to confer benefits on the people by way of a free education, it certainly has the right to set up the conditions under which such benefits shall be provided. The Legislature has authority to impose restrictions on those seeking to attend the public schools and can suspend or expel for events happening out of school hours, 16 McQuillin, Municipal Corporations (3rd ed.), § 46.21, p. 635.
On this point, Justice Bodine, speaking for our former Supreme Court, in the case of Hering v. State Board of Education, 117 N.J.L. 455, 456 (1937), said:
"Those who resort to educational institutions maintained with the state's money are subject to the commands of the state. Hamilton v. Regents of [University of] California, 293 U.S. 245 [55 S.Ct. 197, 79 L.Ed. 343]."
On the question of constitutionality because the title fails to express the objective of imposing absolute liability on parents, etc. as required by Art. IV, Sec. VII, par. 4 of the New Jersey Constitution, I think we can agree that the section in question, R.S. 18:14-51, is part of a compilation and revision. The latter part of the constitutional provision cited supra, states: "This paragraph shall not invalidate any law adopting or enacting a compilation, consolidation, revision, or rearrangement of all or parts of the statutory law."
Justice Heher, speaking for the old Supreme Court, in the case of State v. Czarnicki, 124 N.J.L. 43, 45 (1940) said:
"A revision, consolidation and compilation of all the general laws is not within the mischiefs outlawed by this constitutional edict."
*572 The principle set out in the Czarnicki case on this point applies equally as well to the like provision in the Constitution of 1947.
It is further urged that the statute in question is unconstitutional under the New Jersey and the Federal Constitutions in that it deprives parents of their property without due process of law, i.e., the imposition of liability on the parents of the Hansen boy even though they had no knowledge of their son's propensity for wrongdoing and were in no way at fault; and it "is so unreasonable and arbitrary as to amount to a deprivation of their property without due process."
This conclusion is not well founded. Today we have many examples of liability based upon the acceptance of a given condition or benefit, e.g., the workmen's compensation statutes; liability of a foreign motorist who accepts the use of New Jersey highways, to be subject to process by service on the Director of Motor Vehicles; the absolute liability of owners of aircraft who operate over lands or waters of this State for injury to person or property on land and water beneath, and others. Of course, the parents, like the employer, the foreign motorist and the air transport company, may escape liability if they so choose. The parents do not have to send their child to a public school and thereby be subject to the conditions under which free public education is provided.
In this case there would be no liability on the parents if the Hansen boy were not a "pupil." The liability comes about by reason of the provisions of the statute, a condition under which free public education is made available. Therefore, it cannot be said that the property of the parents of the pupil who is found to be liable under the statute in question is taken arbitrarily without due process of law. The conditions of liability are clearly set out for all to contemplate before enrolling their children in public schools. If a parent is unwilling to assume the liability, he may avoid it by enrolling his son in a private educational institution.
*573 It is also argued that the statute is unconstitutional because it is unfair in imposing such an extreme liability on the parents who are free of fault.
This reasoning touches on equity and moral philosophy. I think it can best be answered by raising this question: Would it be fair to impose the loss on all the other parents of students attending the same school, or upon local taxpayers? Suppose, for example, the defendant pupil were to have gone into the school and carved the name "David" on the teacher's desk, and subsequently it cost $50 to repair the damage, and there are 499 other students in the school. Would it be morally just to assess the parents of each ten cents rather than to assess the full amount against the parents of the culprit? If it would be unfair to assess the parents of the wrongdoer, how could it be fair to assess the parents of the other 499 innocent students? And yet, if we were to follow the reasoning of defense counsel, this in substance is what would happen. The parents of the other 499 students (and taxpayers) would each be assessed indirectly for the damages of the tort-feasor. How can it be logically said that it is fair to assess damages against parents of innocent students and taxpayers, unless it be reasoned that in the sharing of the loss by the many there will be less individual hardship and financial distress. This would exemplify charity but not justice. See the philosophical dicta in Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29, at the bottom of page 36, wherein the court said:
"The law's emphasis generally is on liability, rather than immunity, for wrongdoing. Charity is generally no defense. It is for the legislature, not the courts, to create and grant immunity. * * *."
To apply such a theory would be to clearly violate the spirit as well as the terms of the statute, R.S. 18:14-51.
On the question of lack of due process it was held in the case of the Arizona Copper Co. v. Hammer cases, 250 U.S. 400, 39 S.Ct. 553, 63 L.Ed. 1058 (1919), that there could *574 be liability without fault. Justice Holmes, in a concurring opinion, 250 U.S. at page 433, 39 S.Ct. at page 560 said:
"There is some argument made for the general proposition that immunity from liability when not in fault is a right inherent in free government * * *. But if it is thought to be public policy to put certain voluntary conduct at the peril of those pursuing it, whether in the interest of safety or upon economic or other grounds, I know of nothing to hinder. A man employs a servant at the peril of what that servant may do in the course of his employment and there is nothing in the Constitution to limit the principle to that instance." (Quoting a number of authorities.)
In the case of Prentiss v. National Airlines, 112 F. Supp. 306, at page 310 (D.C.D.N.J. 1953) it was said:
"Furthermore, that absolute liability is recognized today as due process of law, we have on the highest authority. In Crowell v. Benson, 1932, 285 U.S. 22, 82, 52 S.Ct. 285, 304, 76 L.Ed. 598, the highest court in the land said: `the power, under proper circumstances, to provide for liability without fault. * * * is beyond question.' * * * `liability without fault is not a novelty in the law. The common law liability of the carrier, of the innkeeper, or him who employed fire or other dangerous agency or harbored a mischievous animal, was not dependent altogether upon questions of fault or negligence. Statutes imposing liability without fault have been sustained. * * *' See to the same effect City of Chicago v. Sturges, 1911, 222 U.S. 313, 32 S.Ct. 92, 56 L.Ed. 215. The doctrine of absolute liability was well recognized in New Jersey long before the enactment of the statute in question. There can be no question, then, that absolute liability is not per se invalid."
Finally, I think it is clear that with the parents of the defendant pupil, there was a choice of electing to send their son to a public school and accept the statutory liability imposed. By such decision they made themselves amenable to the liability of the statute, supra. See Hering v. State Board of Education, supra.
For the reasons stated, the motion is denied.