RESTAURANT ENTERPRISES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. THE SUSSEX MUTUAL INSURANCE COMPANY, A CORPORATION AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, AND JOSEPH J. PAGGI, t/a PAGE AGENCY, JOINTLY AND SEVERALLY, DEFENDANTS-APPELLANTS.

Argued January 23, 1968—Decided June 3, 1968.

Mr. *H. Hurlburt Tomlin* argued the cause for plaintiff-respondent (*Messrs. Adamo & Pagliughi,* attorneys).

Mr. *Samuel A. Gennet* argued the cause for defendant-appellant The Sussex Mutual Insurance Company, a corporation authorized to do business in the State of New Jersey.

Mr. *Arthur Montano* argued the cause for defendant-appellant Joseph J. Paggi, t/a Page Agency (*Messrs. Kisselman, Devine, Deighan & Montano; Mr. F. Herbert Owens, III,* on the brief).

The opinion of the court was delivered by

HANEMAN, J. The trial of this action resulted in a verdict of no cause of action in favor of Sussex Mutual Insurance Company (Sussex Mutual) in plaintiff's suit on a purported fire insurance binder and no cause of action in favor of Joseph Paggi, an insurance agent, in plaintiff's suit for the negligent processing of an insurance application. The jury returned no verdict on the cross-claims filed between defendants. The Appellate Division reversed as to both defendants and remanded the case for a new trial. *Restaurant Enterprises, Inc. v. Sussex Mutual Insurance Co., 96 N. J.*

*Super.* 26, 27 (*App. Div.* 1967). We granted certification on petitions filed by both defendants. 50 *N. J.* 297 (1967).

The facts giving rise to plaintiff's suits are fully treated in the opinion below and need be repeated only briefly here.

Paggi had a written agreement with Sussex Mutual under which he was appointed its agent authorized to accept proposals for insurance and to issue binders, limited to $40,000 on a single risk. He was obliged to notify Sussex Mutual within 48 hours in writing after he bound it to any risk.

Plaintiff contacted Paggi with reference to obtaining coverage on one of its properties. Since the rate applicable to the type of risk involved was not standard, Paggi, on September 27, 1962, requested from the Mutual Service Organization (Mutual Service), which is involved in the business of calculating such rates and making them available for the use of its subscribers, the suggested rate.

On October 14, 1962, while Paggi's agency relationship with Sussex Mutual was still in effect and before the Mutual Service rates had been received, Paggi issued to plaintiff a written binder of insurance to be effective as of that date, in the sum of $32,000. An examination of the binder shows that the printed duration term had been crossed out and the remark "Pending MSO rates" had been substituted. The binder was therefore by its terms issued for such time as would be required to obtain those rates and not for a time to be measured by a specified number of days. Paggi testified that a copy of the binder was sent to Sussex Mutual. Sussex Mutual, however, denied receipt thereof. Plaintiff contacted Paggi several times thereafter, asking when the policy would issue and was told each time that the Mutual Service rates had not yet arrived. Paggi never suggested that there was a lack of coverage.

On December 30, 1962 a fire destroyed the property covered by the binder and on January 2, 1963 the Mutual Service rates were received by Paggi. Plaintiff filed a timely notice of loss, received a disclaimer of responsibility and instituted this action.

At trial plaintiff introduced the written binder and adduced evidence of a conversation between Paggi and a representative of the mortgagee of the covered property. Plaintiff contended that by this conversation an oral binder was created on December 27, 1962. The trial court instructed the jury that the written binder had terminated at the expiration of 60 days from October 14, 1962, by virtue of *N. J. S. A.* 17:36–5.16 but nevertheless submitted the issue of coverage thereunder to the jury. Judgment which was entered in behalf of Sussex Mutual was reversed on appeal to the Appellate Division for reasons not material here. The Appellate Division by way of instructions for the retrial indicated that the written binder, which it found to have expired by operation of law, should not have come to the attention of the jury. Sussex Mutual appeals from the order for a new trial on the grounds that there was insufficient evidence to support the existence of an oral binder and, since the written binder had expired before the fire, it argues that there is no basis for a judgment against it. Paggi appeals on the asserted incorrectness of the Appellate Division interpretation of *N. J. S. A.* 17:36–5.16.

*N. J. S. A.* 17:36–5.16 requires that:

> "Binders or other contracts for temporary insurance may be made orally for a period which shall not exceed ten days or in writing for a period which shall not exceed 60 days and shall be deemed to include all the terms and conditions of a fire insurance policy as specified by this law and all such applicable endorsements filed with the Commissioner of Banking and Insurance as may be designated in such contract of temporary insurance, except that the cancellation clause and the clause specifying the hour of the day at which the insurance shall commence may be superseded by the express terms of such contracts of temporary insurance."

The Appellate Division, as noted, was of the opinion that this section is mandatorially binding on both insurer and insured. On the strength of *Flowers by DiAlton's v. American Ins. Co.,* 42 *N. J. Super.* 493 (*App. Div.* 1956) affirming 39 *N. J. Super.* 44 (*Law Div.* 1956), the Appellate Division

ruled that the effect of this provision was to terminate any binder upon the expiration of a 60 day term measured from its date of issue. See also *Decor-El, Inc. v. Bertsch,* 13 *N. J. Super.* 166 (*Law Div.* 1951). We cannot agree that this was the intent of the legislature in enacting this provision.

It is clear that the statute seeks to prevent the issuance of binders with more than a 60 day duration. It does not, however, indicate the sanction to be imposed if a binder purporting to be of a longer duration *is in fact* issued. The Appellate Division held the sanction intended was to declare the binder void. But such a sanction could lead to incongruous and inequitable results. Thus a prospective insured, such as plaintiff, might well believe himself to be fully covered and feel it is unnecessary to attempt to secure either the actual policy or insurance from another company only to find himself without the insurance he was led to believe he possessed. *Cf. Lewis v. Travelers Ins. Co.,* 51 *N. J.* 244 (1968). Such a result is patently unfair, visiting, at it does, a penalty upon the insured who has no reason actually to know of the statutory limitation while the insurer who has a duty to know thereof, receives an unjust benefit.

Under such a sanction the insurer can never be harmed by issuing a binder for more than 60 days and the prospective insured, unaware of the statutory limitation, alone can be harmed by accepting it. This result is objectionable because its penalty falls upon the party not intended by the legislature to be penalized. An intention to cause such a result cannot be imputed to the legislature, which is after all presumed to act consonant with reason and good discretion. *Sperry & Hutchinson Co. v. Margetts,* 15 *N. J.* 203 (1954); *Wright v. Vogt,* 7 *N. J.* 1 (1951); *Sharrock v. Borough of Keansburg,* 15 *N. J. Super.* 11 (*App. Div.* 1951). A further indication that this was not the intent behind the statute comes from the words of the enactment which speak of prohibiting the "making" of a binder, something

ordinarily thought of as done by the insurer rather than the insured.

We conceive the statute to be an industry regulation directed to the insurer. The enactment is for the benefit of the insured requiring the insurer to reduce the terms of the insurance to specific policy provisions, more descriptive than binder terms. Thus while the action of the company in issuing a binder for more than 60 days may be prohibited, the prohibition is not meant to void the action as regards an insurance purchaser. The Commissioner of Banking and Insurance who is charged "with the execution of all laws relative to insurance * * *" by *N. J. S. A.* 17:1–1, has the power to impose sanctions other than voiding the policy upon the insurer's noncompliance with *N. J. S. A.* 17: 36–5.16.

Having thus determined that the written binder was still in effect at the time of the fire, it is apparent that judgment should have been entered against Sussex Mutual on the basis of the written binder. On this view of the matter it is unnecessary to determine whether adequate evidence existed to submit the question of the oral binder to the jury. The question of the liability of Paggi on the Sussex Mutual claim has yet to be decided. Upon remand, judgment shall be entered against Sussex Mutual in favor of plaintiff as to liability and the issue of the amount of damages shall be retried; plaintiff's action against Paggi and Paggi's action against Sussex Mutual shall be dismissed; and the cross-claim of Sussex Mutual against Paggi shall be tried.

Reversed and remanded consistent with the foregoing.

HALL, J. (dissenting). The majority turns its disposition of this case on a holding that the provision of our standard fire insurance policy statute, *N. J. S. A.* 17:36–5.15 to 5.28, inclusive, prescribing the maximum duration of contracts of temporary insurance in the form of oral or written binders, *N. J. S. A.* 17:36–5.16, is not binding on the insured. It appears to me that it is not open to the judiciary thus to nul-

lify a patently plain legislative enactment, completely within the province of that branch of government to enact for whatever reason of public policy and interest it may have found compelling.

The scheme of the standard policy statute is that of a legislatively specified fire insurance contract, the prescribed or allowed terms and conditions of which are fully spelled out in the enactment, which may not be validly waived and are binding on both parties whether or not they personally know of them. The contract is not one prepared by the insurer, but rather imposed by positive law. This is the rationale of this court's decision in *Herbert L. Farkas Co. v. New York Fire Insurance Co.*, 5 *N. J.* 604 (1950), where it was said in speaking of a policy:

"Fire insurance policies must be in the form prescribed by statute, and any facts or conditions imposed in a policy inconsistent with or constituting a waiver of the standard form provisions are a nullity. * * * In these circumstances a standard policy of fire insurance may be characterized as a contract of adhesion; the insurer may issue it to a particular assured, if it so chooses, and the insured may accept it, if he so chooses, but their power of bargaining is limited to the simple matters of whether there will be a contract of fire insurance and what property it will cover." (at *pp.* 609–610). This rationale is equally applicable to a contract of temporary insurance.

*N. J. S. A.* 17:36–5.16, dealing with such contracts, speaks very clearly, in effect, that they shall be deemed to include all the terms and conditions of the standard policy and designated approved endorsements (whether the insured knows of them or not), with certain exceptions not here pertinent, and that they shall expire 10 days after the effective date, if oral, and 60 days, if in writing, unless the contract specifies an earlier date. I take it this plain language can only mean that, regardless of the state of knowledge of the insured, the statutory period of duration shall control in the case of a temporary written contract even if the writing is silent on

the subject, an express termination date is specified which is beyond the period or, as here, a duration event is set forth which may or may not occur within 60 days.

It is not difficult to envisage an appropriate reason for the provision dealing with temporary contracts. While it is desirable that persons be able to secure immediate fire insurance coverage by informal contracts, such agreements are ordinarily very incomplete, covering as between the parties little more than a broad description and location of the risk and the amount of insurance desired. The statute does not require any particular form of written binder; the sketchiest writing will suffice. Oral contracts are generally even less definite. In the interest of both parties and of the orderly transaction of this important kind of business, the undertaking should be completed and the formal contract, with all its detail, issued promptly. To accomplish this and avoid controversy, the requirement of a limited time period of effectiveness could well appeal to legislators as desirable. So temporary contracts are entirely valid when entered into, as here, but expire automatically at the end of the statutory period anything therein to the contrary notwithstanding. If the insured's agent to procure insurance (here he was the insurer's agent as well) has not effectively done so, it is elementary that the insured's right of action is against him (who in these days is generally also insured against his errors and omissions) rather than against the insurer.

This mandatory nature of a statutory limitation on the duration of temporary fire insurance contracts has heretofore clearly been the law of this state. *Flowers by DiAlton's, Inc. v. American Insurance Co.*, 42 *N. J. Super.* 493 (*App. Div.* 1956), affirming 39 *N. J. Super.* 44 (*Law Div.* 1956); *Decor-El, Inc. v. Bertsch*, 13 *N. J. Super.* 166 (*Law Div.* 1951). It has likewise been the view taken in other states having similar statutes which have had occasion to pass on the question. *Rosen v. Colonial Cooperative Insurance Co.*, 51 *Misc.* 2d 805, 274 *N. Y. S.* 2d 67 (*Sup. Ct.* 1966); *Eastern Shore of Virginia Fire Ins. Co. v. Kellam*, 159 *Va.* 93,

165 *S. E.* 637 (1932). *Cf. Rowell v. Georgia Casualty and Surety Co.,* 109 *Ga. App.* 631, 136 *S. E.* 2d 917 (1964); *Citizens Casualty Co. of N. Y. v. Hackett,* 17 *Utah* 2d 304, 410 *P. 2d* 767 (1966). See 3 *Richards on Insurance* (*5th ed.* 1952), § 384, *p.* 1275, § 509, *p.* 1646, *n.* 14. The majority cite no authority to the contrary and I can find none.

Therefore I would agree with the Appellate Division that the written binder in this case had expired by operation of law some 16 days before the loss. I further think it beyond question that there was not sufficient evidence to submit to a jury whether any oral contract had been entered into after such expiration, a question fully argued by the parties here. Consequently the insurance company's motion for judgment at trial should have been granted and I would direct the entry of such a judgment now, with the matter remanded for trial of the insured's claim against the agent and, depending on the outcome of that contest, subsequent disposition of the latter's cross-claim against the insurance company.

*For reversal*—Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and HANEMAN—5.

*For modification*—Justice HALL—1.