143 N.J. Super. 128 (1976)
362 A.2d 1200
JANE DOE, INDIVIDUALLY AND ON BEHALF OF HER MINOR SON, A.A., AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, PLAINTIFF-APPELLANT,
v.
CITY OF TRENTON, MUNICIPAL COURT OF THE CITY OF TRENTON, TRENTON POLICE DEPARTMENT, AND GEORGE DOUGHERTY, CITY ATTORNEY FOR CITY OF TRENTON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1976.
Decided June 30, 1976.
*129 Before Judges CARTON, CRAHAY and HANDLER.
Mr. Dennis S. Brotman argued the cause for appellant (Legal Aid Society of Mercer County, attorney  Alice Ashley Costello, Director).
Mr. George T. Dougherty, City Attorney for Trenton, argued the cause for respondents (Mr. Dennis J. Quinn, Assistant City Attorney, on the brief).
Brief for amicus curiae Office of the Public Defender, Child Advocacy Unit, filed by Mr. Stanley C. Van Ness, Public Defender-Public Advocate (Mr. Steven Zamrin, Assistant Deputy Public Defender, on the brief).
*130 Brief for amicus curiae Township of Willingboro, filed by Messrs. Kessler, Tutek and Gottlieb (Mr. Myron H. Gottlieb on the brief).
The opinion of the court was delivered by CARTON, P.J.A.D.
This is a challenge to the constitutionality of the City of Trenton's "parent responsibility ordinance."[1] The attack centers on the ordinance's presumption that a parent (as defined by the ordinance) is responsible for the misbehavior of a child who twice within one year is adjudged guilty of acts defined as violations of the public peace. The acts so defined include adjudications for delinquency and of the status of being a juvenile in need of supervision (JINS). See N.J.S.A. 2A:4-44 (defining delinquency) *131 and N.J.S.A. 2A:4-45 (defining JINS offenses). A parent convicted under the ordinance may be fined up to $500.
Plaintiff was cited in a sworn complaint for violation of the ordinance. The complaint recited that her son, age 13, "was convicted a second time within a one year period of a violation of the public peace by the Mercer County Juvenile [sic] Court." Ruling on cross-motions for summary judgment, the trial judge upheld the validity of the ordinance and its attendant presumption.
The term "presumption" is used in the law to express a variety of concepts. Basically, however, the effect of a presumption is this: proof of fact B (the proved fact) establishes a presumption of the truth of fact A (the presumed fact). The present case graphically illustrates the effect of a presumption. The fact of two public peace convictions on the minor's part within a year (the proved fact) establishes a rebuttable presumption that the violations stemmed from active or passive parental fault (the presumed fact).
The relatively widespread existence of presumptions in our law is attributable to a variety of factors involving considerations of policy, fairness and convenience. However, as one distinguished writer observed, most presumptions have arisen from the belief that
* * * proof of fact B renders the inference of the existence of fact A so probable that it is sensible and time-saving to assume the truth of fact A until the adversary disproves it. [McCormick on Evidence (2 ed. 1972), § 343 at 807]
The establishment of presumptions favorable to the government in criminal and quasi-criminal cases raises delicate issues of due process under the Fifth and Fourteenth Amendments. See generally, Ashford & Risinger, "Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview," 79 Yale L.J. 165 (1969). While such presumptions are not constitutionally interdicted (e.g., Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L. *132 Ed. 1519 (1943)), they must possess certain qualities of trustworthiness. In general, inquiry as to whether a particular presumption is up to constitutional requirements focuses on the degree to which the presumed fact tends, in reality, to flow from the established fact. See McCormick, op. cit., § 344 at 811-17. In Tot v. United States, supra, that standard was enunciated as follows:
[A] statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of the lack of connection between the two in common experience. [319 U.S. at 467, 468, 63 S.Ct. at 1245]
The court also spoke in terms of "the normal balance of probability." 319 U.S. at 469, 63 S.Ct. 1241.
In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), the court reviewed its treatment of Tot's "rational connection," "common experience" and "normal balance of probability" approaches to presumptions and concluded that:
A criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. [395 U.S. at 36, 89 S.Ct. at 1548; emphasis supplied]
The precise question before this court is whether we may state with "substantial assurance" that a minor's second public peace adjudication was "more likely than not" the result of passive or active wrongdoing on the part of the minor's parent or parents.
The roots of juvenile misconduct are complex and imperfectly understood. If there is consensus at all in the field, it is on the proposition that children growing up in urban poverty areas are those most likely to be identified as juvenile delinquents. See The Challenge of Crime in a Free Society, A Report by the President's Commission on Law Enforcement *133 and Administration of Justice 57 (1967). The City of Trenton provides us with nothing which would support a finding that parental influence is an overriding cause of juvenile misconduct. Certainly, there has been demonstrated no basis for a court to take judicial notice of such a proposition. Nor can it be said to be self-evident. Indeed, there is nothing to suggest that there is any calculus of probabilities which would compel such a conclusion.
By contrast, plaintiff and amicus Public Advocate provide a representative sampling of prevailing expert opinion, research and analysis tending to support the conclusion that parental actions are but a single factor in the interaction of forces producing juvenile misconduct. That analysis is aptly summed up in Comment, "Parental Responsibility Ordinances  Is Criminalizing Parents When Children Commit Unlawful Acts a Solution to Juvenile Delinquency?," 19 Wayne L. Rev. 1551 (1973):
The family is just one of the numerous interrelated forces, including schools, housing, recreation, community life, employment and the juvenile justice system itself which influence a juvenile toward or away from a life of delinquency. [19 Wayne L. Rev. at 1577; footnote omitted]
At least one author has noted that where ordinances similar to the one here challenged are enacted, the delinquency rate remains unchanged. Rubin, Crime and Juvenile Delinquency 22 (1970).
We are satisfied that the Trenton ordinance does not comport with due process. The fact of two public peace adjudications within one year does not make it "more likely than not" that the second was the result of parental action or inaction. The presumed fact in the Trenton ordinance (parental responsibility for delinquent acts of the child) does not flow naturally from the proved fact (a second adjudication within one year). While Euripides reminds us that the gods often visit the iniquities of the fathers upon the children, we are not yet prepared to say that the converse ought to be so.
*134 We note that the ordinance, despite its brevity (two paragraphs), contains a severability clause. The presence of such a clause cannot serve to save the remainder of the ordinance since the presumption is an integral part of the whole. See, e.g., Affiliated Distillers Brands Corp. v. Sills, 60 N.J. 342 (1972).
In view of our conclusion that the ordinance must be struck down because of its failure to comport with due process, we do not reach the further question whether the ordinance may also be invalid for the reason that it represents an intrusion into an area preempted by the State Legislature.
Reversed.
NOTES
[1] The ordinance, as amended, reads in pertinent part as follows:

2. Certain Acts Prohibited. It shall be unlawful for any parent to assist, aid, abet, allow, permit, suffer or encourage a minor to commit a violation of the public peace, as defined herein, either by overt act, by failure to act or by lack of supervision and control over such minor. Whenever a minor shall be taken into custody or detained for the commission of any such violation of the public peace within the City of Trenton, the parents of such minor shall be immediately notified by the Police Division of such custody or detention and the reasons therefor, and of the responsibility of parents under this Ordinance. When a minor is charged with a violation of the public peace, as defined herein, and the Court makes an adjudication of delinquency or determines that the minor is a juvenile in need of supervision pursuant to the appropriate statutory provisions regarding juveniles, the Chief of Police, or his designated agent, shall forthwith serve written notice of said adjudication of delinquency or determination as to supervision upon the parents, together with a written warning, in a form approved by the City Attorney of the penalties and other provisions of this Ordinance with respect to the commission within one year of a second violation of the public peace by said minor. If at any time within one year of the giving of such notice, such minor shall be charged with a violation of the public peace, and shall again be adjudicated delinquent, it shall be presumed, subject to rebuttal by competent evidence that the parents of said minor during said period of time, allowed, permitted or suffered said minor to commit a violation of the public peace. A record of such notification shall be kept by the Police Division. [Emphasis supplied]