BOARD OF EDUCATION OF PISCATAWAY TOWNSHIP, A PUBLIC BODY OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MR. JOSEPH CAFFIERO, MRS. JOSEPH CAFFIERO, HIS WIFE, JAY CAFFIERO, MR. DANIEL O'DONNELL, MRS. DANIEL O'DONNELL, HIS WIFE, AND FRANCIS O'DONNELL, DEFENDANTS-APPELLANTS, AND MR. DEAN MARTONE, MRS. DEAN MARTONE, HIS WIFE, AND DEAN MARTONE, DEFENDANTS.

BOARD OF EDUCATION OF THE BOROUGH OF ROSELLE, PLAINTIFF, v. TULIO MONAGAS, "JANE" MONAGAS, (FIRST NAME BEING FICTITIOUS) AND ANGEL MONAGAS, DEFENDANTS-APPELLANTS, AND GREAT AMERICAN INSURANCE COMPANY, INTERVENOR.

Argued February 10, 1981—Decided June 9, 1981.

310

*James D. Martin, Jr.,* argued the cause for appellants Joseph Caffiero, et al. (*Lynch, Mannion, Lewandowski & Martin* and *Monico & Rappa,* attorneys).

*A. Herbert D'Amico* argued the cause for appellants Daniel O'Donnell, et al.

*Michael Muscio* argued the cause for appellants Tulio Monagas, et al.

*Joel N. Werbel* argued the cause for intervenor Great American Insurance Company (*Methfessel & Werbel,* attorneys).

*Fredrica Hochman* argued the cause for *amicus curiae* Association for Children of New Jersey.

*David B. Rubin* argued the cause for respondent (*Rubin, Lerner & Rubin,* attorneys).

*Alfred E. Ramey, Jr.,* Deputy Attorney General, argued the cause for *amicus curiae* Commissioner of Education (*John J. Degnan,* Attorney General of New Jersey, attorney; *Stephen Skillman,* Assistant Attorney General, of counsel).

*Christine D. Weger,* Associate Counsel, relied upon the brief submitted to the Appellate Division on behalf of *amicus curiae* New Jersey School Boards Association (*David W. Carroll,* General Counsel, attorney).

The opinion of the Court was delivered by

PASHMAN, J.

In these cases we must determine the constitutionality of *N.J.S.A.* 18A:37–3,[1] which imposes vicarious liability without fault on the parents or guardian of any pupil who damages public school property. This statute is distinct from the general parental liability statute in New Jersey, which holds a parent, guardian or other person with legal custody of a child liable for the child's acts of vandalism against any property only when there is failure or neglect to exercise reasonable supervision and

---

[1] *N.J.S.A.* 18A:37–3 provides:

control of the child's conduct. *N.J.S.A.* 2A:53A–15.[2] In contrast, as we hold today, the vicarious liability statute is applicable only to the parents of public school pupils. Consequently, the defendants challenge its validity on due process and equal protection grounds. We hold that *N.J.S.A.* 18A:37–3 is constitutional.

### I

According to the allegations of the civil complaint filed by plaintiff Board of Education of Piscataway Township, defendants Jay Caffiero, Francis O'Donnell and Dean Martone broke into Piscataway High School on May 9, 1976. At the time, these defendants were enrolled as pupils in the Piscataway school system. Extensive damage was allegedly caused to the building and property inside by acts of the three defendants. In separate counts of the complaint, the defendants' acts are described as either negligent and careless or willful and malicious.

The complaint also named as defendants the parents of each of the three pupils, seeking recovery on the grounds of either negligent supervision of the children under *N.J.S.A.* 2A:53A–15 or vicarious liability under *N.J.S.A.* 18A:37–3. The Caffieros and the O'Donnells answered the complaint, denying essentially all the allegations and raising separate defenses including the unconstitutionality of the vicarious liability statute. Following

---

The parents or guardian of any pupil who shall injure any school property shall be liable for damages for the amount of the injury to be collected by the board of education of the district in any court of competent jurisdiction, together with costs of suit.

[2] The current version of *N.J.S.A.* 2A:53A–15 provides:

A parent, guardian or other person having legal custody of an infant under 18 years of age who fails or neglects to exercise reasonable supervision and control of the conduct of such infant, shall be liable in a civil action for any willful, malicious or unlawful injury or destruction by such infant of the real or personal property of another.

At the time of the acts giving rise to these suits, this statute placed a $250 limit on the parents' liability.

presentation of proofs by plaintiff, a default judgment in the amount of $28,540 was entered against the Martones for the damages, including investigatory and administrative costs, caused by the acts of the three young defendants.[3]

To resolve the constitutional issue, plaintiff Board of Education moved for summary judgment against all the parents for any damages caused by their sons. The motion was submitted on the pleadings, briefs and oral arguments of the parties. Although it appears that the parents made certain admissions for purposes of the motion, the record does not indicate clearly what those admissions were. In effect, the trial court considered all factual questions unfavorably to the parents for the purpose of determining whether they would be liable to the school board under *N.J.S.A.* 18A:37–3. It held the statute unconstitutional as violative of due process, and therefore void. 159 *N.J.Super.* 347 (Law Div.1978).

The Board of Education made a motion to the Appellate Division for leave to appeal from the trial court's interlocutory order. The Appellate Division granted the motion and, before argument, consolidated the appeal with *Board of Education of Roselle v. Monagas.*

The facts of *Roselle* are similar to those of *Piscataway.* On December 14, 1975, a fire occurred at a school building owned by the plaintiff Board of Education. Subsequently, the Board instituted an action against defendant Angel Monagas, who was a pupil in the school system at the time of the fire, and his parents. The claim against the parents was based solely on *N.J.S.A.* 18A:37–3. The defendants filed an answer denying the allegations of the complaint and raising as a separate defense the unconstitutionality of the statute. The parents then moved for an order dismissing the claim against them. The trial court granted the motion for the reasons expressed by the trial court in the earlier *Piscataway* decision. The Board of Education

---

[3]The default judgment was originally entered against the Caffieros, too, but this judgment was later vacated pursuant to a consent order.

moved before the Appellate Division for leave to appeal. The motion was granted and the case consolidated with *Piscataway.*

A divided Appellate Division panel reversed both trial court orders. It held that the statute is constitutional and therefore the parents could by found vicariously liable under the statute for the damages to school property caused by their sons. 173 *N.J.Super.* 204 (1980).

The dissenting judge agreed with the parents that the statute is arbitrary and unreasonable and therefore violative of due process of law. He believed that vicarious liability without fault could be imposed only where a risk of harm has been created by the act or omission of the person held liable. He reasoned that imposition of liability based solely on the status of the defendants as parents was logically no different from imposition of liability based on some more tenuous relationship between the defendant and wrongdoer, such as grandparent, uncle, or witness to the unlawful acts. *Id.* at 214 (dissenting opinion).

After the adverse disposition by the Appellate Division, defendants filed a motion before this Court for leave to appeal, which we granted, 85 *N.J.* 133 (1980). We also permitted the Association for Children of New Jersey, the Commissioner of Education, and the New Jersey School Boards Association to participate as *amici curiae.*

II

*N.J.S.A.* 18A:37–3 provides:

The parents or guardian of any pupil who shall injure any school property shall be liable for damages for the amount of the injury to be collected by the board of education of the district in any court of competent jurisdiction, together with costs of suit.

The predecessor of this statute was enacted in 1867 as part of an act establishing the public school system. *L.* 1867, *c.* 179. The parental liability provision was included in a section concerning the discipline of pupils in the public schools. *Id.* at § 47. According to the *amici*, the statute was not relied upon by school boards during much of its existence. Nevertheless, the Legislature reenacted the statute in 1903, *L.* 1903 (2d Sp.Sess.), *c.* 1,

§ 120, and codified it as part of Title 18A by *L.* 1967, *c.* 271. School boards have recently turned to the statute to deter vandalism and to cope with its burgeoning costs.[4]

Because the statute is part of the chapter of our education laws regulating the discipline of pupils in public schools, its purpose is not limited to compensating school districts for their losses. Another important purpose is to deter delinquent behavior by pupils and to aid in maintaining discipline in the schools. Any reading of the statute must keep these purposes in mind.

■ Before turning to the constitutional questions raised by this appeal, we must resolve several issues concerning the scope of the statute. First, although its language does not limit the statute strictly to the parents of public school pupils, it is clear from the position of *N.J.S.A.* 18A:37–3 among other statutory sections concerning public school children that the word "pupil" has that limited meaning. The statute is not applicable to parents generally for damages caused by their children whether attending a public school or not.[5]

■ Second, because one purpose of the statute is to aid the disciplining of pupils, we believe that the words "parents or guardian" were intended to refer only to the person or persons who are responsible for a child. The inclusion of the word "guardian" indicates that the Legislature did not intend to impose liability solely on the basis of parental relationship. The statute applies only to persons who have legal custody and control of a child and therefore can be charged on that basis with responsibility for the child's conduct.

■ Finally, although the statute itself does not include such a restriction, the damages caused by the pupil must have

---

[4]The *amici* report the costs of intentional damage to school property to be millions of dollars per year.

[5]We express no view here about whether the statute applies where a school board seeks to recover from the parents of a pupil enrolled in a different public school system.

resulted from willful or malicious acts. This construction follows from the statute's purpose of aiding the disciplining of pupils and deterring acts of vandalism against school property. As we have said, the Legislature was concerned not solely with compensating school boards for damage to property but also with deterring delinquent behavior. Permitting the school board to recover from the parents where a child has caused damages negligently or without fault would not further the purpose of deterrence in any way. A statute should not be read literally where such a reading is contrary to its purposes. *Valerius v. City of Newark*, 84 *N.J.* 591, 598 (1980); *Restaurant Enterprises, Inc. v. Sussex Mutual Ins. Co.*, 52 *N.J.* 73 (1968); 2A Sutherland, *Statutory Construction* § 46.07 (4th ed. 1973). The Court has not been made aware of any widespread attempt by school boards or their subrogees to recover from parents for negligent or faultless damage done to school property by their children. *But cf. Board of Education of Palmyra v. Hansen*, 56 *N.J.Super.* 567 (Law Div.1959) (school board seeking recovery for fire allegedly caused by pupil's negligence). Nevertheless, we take this opportunity to construe the statute more narrowly than its literal wording. Thus, a school board may not base a claim against parents on *N.J.S.A.* 18A:37–3 unless it can show that the damages caused by the pupil resulted from willful or malicious acts and that the parents charged with liability had legal custody and control of the pupil at the time of his unlawful conduct.[6]

### III

Having defined the intended scope of the statute, we must now consider whether it violates due process of law as

---

[6]Although the dissent criticizes the Court for "inventing" a new statute, nowhere does it attempt to say how our interpretation departs from the ordinary judicial function of interpreting statutes consonantly with legislative intent. *See, e. g., Suter v. San Angelo Foundry*, 81 *N.J.* 150, 160 (1979), and *id.* at 203–04 (Clifford, J., concurring). We do not decline this function simply because the statute is old.

arbitrary or capricious legislation. We note first that the statute is presumed to be constitutional, *Male v. Ernest Renda Contracting Co.*, 64 *N.J.* 199, cert. denied, 419 *U.S.* 839, 95 *S.Ct.* 69, 42 *L.Ed.2d* 66 (1974); *New Jersey Sports & Exposition Auth. v. McCrane*, 61 *N.J.* 1, 8, appeal dismissed, 409 *U.S.* 943, 93 *S.Ct.* 270, 34 *L.Ed.2d* 215 (1972), and that the burden is on defendants to demonstrate clearly that it violates a constitutional provision.

■ Due process requires "only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall bear a rational relation to the legislative object sought to be obtained." *Robson v. Rodriquez*, 26 *N.J.* 517, 522 (1958); *see Nebbia v. New York*, 291 *U.S.* 502, 54 *S.Ct.* 505, 78 *L.Ed.* 940 (1934). We do not sit as a body reviewing the wisdom of legislative decisions, whether new or old, but can determine only whether legislative action is within constitutional limitations. *New Jersey Sports & Exposition Auth. v. McCrane, supra,* 61 *N.J.* at 8; *A. & B. Auto Stores v. City of Newark*, 59 *N.J.* 5, 19 (1971); *Michael M. v. Superior Court*, —— *U.S.* ——, 101 *S.Ct.* 1200, 1210, 67 *L.Ed.2d* 437, 450 (1981) (Stewart, J., concurring). If the statute does not violate the Constitution but is merely unwise or based on bad policy, then, despite the urging of the dissent, it is for the Legislature rather than this Court to deliver a finishing blow to it.

Defendants argue that the statute violates due process because no rational relationship exists between the purpose of deterring delinquent behavior and the imposition of liability on parents. They believe that a parental liability statute makes sense only if it is based on the parents' own wrongdoing, such as in *N.J.S.A.* 2A:53A–15. They argue further that since there is no necessary relationship between a child's delinquent behavior and the parents' wrongdoing, the statute irrationally imposes vicarious liability without fault solely on the basis of status as parents.

■ Vicarious liability without fault is not a new concept. If has been upheld against due process challenges in a number

of other situations. *A. & B. Auto Stores v. City of Newark,* *supra* (municipality liable without fault to property owner for damages caused by rioting mob); *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55 (1960) (owner of aircraft liable without fault for ground damages caused by operation of aircraft); *New York Central R.R. Co. v. White,* 243 *U.S.* 188, 37 *S.Ct.* 247, 61 *L.Ed.* 667 (1917) (employer liable without fault for injuries to employee under worker's compensation law). Due process does not restrict legislative imposition of liability to situations in which a defendant or his agent is at fault. Other considerations may warrant the imposition of liability and a statute will be struck down only if it operates arbitrarily or capriciously.

In most instances, strict or vicarious liability has its source in a policy decision that the person held liable is in a position to spread the costs of injury over a large portion of the public. *See* W. Prosser, *The Law of Torts,* § 69 at p. 459 & § 75 at p. 494 (4th ed. 1971). Some prominent examples of liability based on cost spreading principles are strict products liability, an employer's liability under worker's compensation, and an employer's vicarious liability under the doctrine of *respondeat superior* for his employee's tortious conduct. Underlying each, at least in its modern application, is a policy decision that it is better for the consuming public to bear the costs of injuries than the innocent injured party.

Under the circumstances of this case, however, the innocent injured party is the public itself. Spreading of costs is obviously not the purpose of *N.J.S.A.* 18A:37–3 since the easiest way to accomplish that purpose would have been to impose no liability on the parents and compel the public to pay for the losses through tax dollars. Manifestly, a different policy decision is behind imposition of vicarious liability through *N.J.S.A.* 18A:37–3. The Legislature apparently believed that it was more important to compensate the public and to deter delinquent behavior than to spread costs. We cannot say that such purposes are unreasonable and therefore an invalid basis for imposition of vicarious liability. As long as the means chosen by the Legisla-

ture have a rational relation to obtaining the objective sought, the statute will not be in violation of due process of law as an arbitrary or capricious enactment.

■ The existence of the parent-child relationship provides a rational basis for imposing liability and is a reasonable means to accomplish the purposes of compensation and deterrence. The United States Supreme Court has recognized that "parents have an important 'guiding role' to play in the upbringing of their children." *H.L. v. Matheson*, —— *U.S.* ——, ——, 101 *S.Ct.* 1164, 1172, 67 *L.Ed.2d* 388, 399 (1981); *Bellotti v. Baird*, 443 *U.S.* 622, 637–39, 99 *S.Ct.* 3035, 3045–46, 61 *L.Ed.2d* 797 (1979). The Legislature could have reasonably believed that subjecting parents to vicarious liability for their children's willful and malicious acts of vandalism would encourage parents to exercise their "guiding role" in the upbringing of their children. Through better parental supervision and guidance, the Legislature hoped to deter delinquent conduct. Our concern is not whether that hope has been or will be fulfilled but whether there is a rational basis for it. Though we acknowledge the difficulties of being a parent, we cannot say that there is no rational basis for the statute.

We note that courts in other jurisdictions that have considered due process challenges to parental liability statutes have also sustained the statutes. *Watson v. Gradzik*, 34 *Conn.Supp.* 7, 373 *A.2d* 191 (Ct.Com.Pl.1977); *Vanthournout v. Burge*, 69 *Ill.App.* 3d 193, 25 *Ill.Dec.* 685, 387 *N.E.2d* 341 (1979); *In re Sorrell*, 20 *Md.App.* 179, 315 *A.2d* 110 (1974); *General Ins. Co. of America v. Faulkner*, 259 *N.C.* 317, 130 *S.E.2d* 645 (1963); *Rudnay v. Corbett*, 53 *Ohio App.2d* 311, 374 *N.E.2d* 171 (1977); *Kelly v. Williams*, 346 *S.W.2d* 434 (Tex.Civ.App.1961); *Mahaney v. Hunter Enterprises, Inc.*, 426 *P.2d* 442 (Wyo.1967).[7]

---

[7]Only in Georgia has such a statute been struck down, apparently because of that state's policy against imposition of liability without fault. *Corley v. Lewless*, 227 *Ga.* 745, 182 *S.E.2d* 766 (1971).

It is of little constitutional significance that the statutes upheld in the above cases contained a maximum limit on liability. A fixed dollar limit would not adequately accomplish the State's purpose of compensation. By placing a limit on liability, the remedy becomes a form of civil penalty. We see no reason to believe that the imposition of a civil penalty on parents is a constitutionally permissible means of encouraging discipline, but that vicarious liability for actual damages is not. *See Rudnay v. Corbett, supra,* 374 *N.E.2d* at 175 n. 5.[8]

The dissent's suspicion that the statute will have its largest impact on the poor is no more than a hunch. Not only is the record before us bare of any evidence to support such a conclusion but *amicus* New Jersey School Boards Association claims that vandalism in schools is as much a problem in affluent school districts as in poorer ones.

Finally, we fully agree with the Appellate Division that the holding of *Doe v. City of Trenton,* 143 *N.J.Super.* 128 (App.Div. 1976), aff'd o. b., 75 *N.J.* 137 (1977), is not applicable here. In *Doe,* a city ordinance created a presumption of parental responsibility for delinquent acts of a child and imposed criminal liability on the parents. Applying the rule developed by the Supreme Court for presumptions in criminal prosecutions, the court held that it could not be said with "substantial assurance" that the presumed fact is "more likely than not" to flow from

---

[8]We note also the holding of some courts that the statutorily imposed liability of the parents is covered by regular homeowners' liability insurance since under these circumstances the parents themselves would not come within a policy provision excluding the carrier's liability for intentional torts. *See Arenson v. Nat. Auto. and Cas. Ins. Co.,* 45 *Cal.2d* 81, 286 *P.2d* 816 (1955); *White v. LeGendre,* 359 *So.2d* 652 (La.App.), *cert.* denied, 360 *So.2d* 1176 (La.1978); *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.,* 20 *Wash.App.* 261, 579 *P.2d* 1015 (1978). *Cf. Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477 (1978) (insurer obligated to compensate innocent parties on liability policy where insured who caused intentional injury would not benefit from coverage). *But see Randolph v. Grange Mut. Cas. Co.,* 57 *Ohio St.2d* 25, 385 *N.E.2d* 1305 (1979) (no coverage for intentional acts of minor son). We express no opinion on this subject.

the proven fact. *Id.,* 143 *N.J.Super.* at 132–33. Such a strict standard has no place in reviewing statutes imposing civil liability, where only a reasonable relationship between the means and ends is required.

We conclude that *N.J.S.A.* 18A:37–3 does not violate due process of law in holding the parents or guardian of a public school pupil vicariously liable for the pupil's willful or malicious injury of school property.

## IV

The defendants' equal protection challenge is based on the differing treatment of parents of public school pupils and parents of other children. If a child who is not a "pupil" within the meaning of *N.J.S.A.* 18A:37–3 damages public school property, the statute is unavailable as a basis of recovery by the school board. Consequently, the school board can recover from the parents only if it can meet the more stringent standards of common law parental liability or *N.J.S.A.* 2A:53A–15. Under this latter statute, as well as common law, the parents are liable only if they failed or neglected to exercise reasonable supervision and control of the child's conduct. *See supra,* at 313 n. 2; W. Prosser, *supra,* § 123 at pp. 871–73. In other words, the parents must be at fault themselves before they can be held liable. This standard makes it difficult to subject a parent to liability when his child causes damage. In contrast, the standard of vicarious liability without fault applicable under the narrower scope of *N.J.S.A.* 18A:37–3 is much easier for plaintiff school boards to meet.

Under equal protection analysis, a statute must satisfy the standard of strict scrutiny if it operates to the disadvantage of a "suspect class" or impinges upon a fundamental constitutional right. *San Antonio Ind. School Dist. v. Rodriguez,* 411 *U.S.* 1, 16–17, 93 *S.Ct.* 1278, 1287–88, 36 *L.Ed.2d* 16 (1973). This standard requires that the statute be struck down unless the means chosen are necessary to promote a compelling

governmental interest. *Matthews v. Atlantic City*, 84 *N.J.* 153, 167 (1980). It is clear in this case that the statute does not implicate a suspect classification, but defendants suggest two fundamental rights burdened by *N.J.S.A.* 18A:37–3.

 The first of these is the right to bear children. This assertion merits little discussion. The effect of the vicarious liability statute on the decision of individuals to bear or beget children is speculative, at best. Other laws impose financial burdens on parents because they have given birth to children. *See N.J.S.A.* 2C:24–5, 2C:62–1, 9:6–1, and 9:2–6; *Grotsky v. Grotsky*, 58 *N.J.* 354 (1971); *Greenspan v. Slate*, 12 *N.J.* 426 (1953). It can hardly be contended that judicial recognition of this fundamental right was meant to prevent the states from imposing financial obligations on parents. "With the right to bear and raise children comes the responsibility to see that one's children are properly raised...." *Watson v. Gradzik, supra*, 373 *A.2d* at 192. That responsibility can extend to vicarious liability for the child's intentional or malicious acts of vandalism.

 The second suggested right, the right to a free public education, has not been recognized under the Fourteenth Amendment of the federal Constitution, *San Antonio Ind. School Dist. v. Rodriguez, supra*, 411 *U.S.* at 35, 93 *S.Ct.* at 1297, but has been designated a fundamental right protected by our State Constitution, *Levine v. New Jersey Dep't of Inst.*, 84 *N.J.* 234, 258 (1980). We do not believe that *N.J.S.A.* 18A:37–3 burdens this fundamental right. First, the statute imposes liability on parents, not children whose rights to a free public education are at stake. Second, it is unlikely that subjecting parents and children to reasonable measures designed to promote discipline will deter children from availing themselves of the right to a free education. The remote potential for vicarious liability of parents does not pose a sufficient threat to this right of their children to amount to a constitutionally significant burden requiring strict judicial scrutiny of the statute.

■ Since a fundamental right is not burdened, the statute will satisfy the requirement of equal protection if "it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination...." *San Antonio Ind. School Dist. v. Rodriguez, supra,* 411 *U.S.* at 17, 93 *S.Ct.* at 1288. This standard has been described recently by the Supreme Court:

> Legislatures have wide discretion in passing laws that have the inevitable effect of treating some people differently from others, and legislative classifications are valid unless they bear no rational relationship to a permissible state objective.

> . . . . . . . .

> [A legislative classification] will be upheld "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." [*Parham v. Hughes,* 441 *U.S.* 347, 351–52, 99 *S.Ct.* 1742, 1745–46, 60 *L.Ed.2d* 269 (1979) (plurality opinion), quoting *Vance v. Bradley,* 440 *U.S.* 93, 97, 99 *S.Ct.* 939, 943, 59 *L.Ed.2d* 171 (1979)]

Here, the classification of public school parents is rationally related to a legitimate governmental objective, maintaining discipline in the public schools. As we have already said, the Legislature imposed vicarious liability on parents of public school pupils with the hope of encouraging more careful parental supervision and guidance of their children. Such supervision and guidance would undoubtedly aid school authorities in maintaining discipline in the schools.

■ The fact that the Legislature did not at the same time address the problem of deterring delinquent behavior by non-public school children or the problem of compensating school districts for all acts of vandalism does not deprive the statute of its rational basis. A state may undertake resolution of problems one step at a time, addressing itself to the part of the problem that seems most acute. *Williamson v. Lee Optical of Oklahoma,* 348 *U.S.* 483, 489, 75 *S.Ct.* 461, 465, 99 *L.Ed.* 563 (1955). A statute does not violate equal protection simply because it is underinclusive or could have been drawn more precisely to accomplish the governmental objectives. *Michael M. v. Superior*

*Court, supra,* —— *U.S.* at ——, 101 *S.Ct.* at 1206, 67 *L.Ed.*2d at 445. The Legislature could reasonably have concluded that deterring damage to public school property and maintaining discipline in public schools were the immediate problems to be rectified. The statute is one way of achieving that objective.

We hold that the distinctions created by *N.J.S.A.* 18A:37–3 are rationally related to a legitimate governmental purpose and therefore the statute does not deny equal protection of the laws.

V

The eradication of vandalism in public schools will require more than a parental liability statute. But the starting point for a solution could be a resurgence of the belief that parents should take responsibility for their children's activities. This responsibility comes with one's status as a parent and reaches legal and moral dimensions in our society. The laws of this State, if not higher principles, may properly provide incentives for parents to fulfill their roles in the lives of their children.

Since *N.J.S.A.* 18A:37–3 is constitutional, the school boards in these cases can maintain an action against the parents based on vicarious liability. They will have to prove, however, that the statute applies under the construction we have given it. Thus, the school boards here must show that the defendant parents had legal custody and control of the pupils at the time they willfully and maliciously damaged school property.

In *Piscataway,* the parents made certain admissions, which are not ascertainable from the record before us. In the procedural posture of the case at present, the trial court must reconsider whether the summary judgment motion of the school board should be granted in light of this opinion. In *Roselle,* the trial court dismissed the count against the parents. That count must now be reinstated.

We remand to the trial courts for proceedings consistent with this opinion. The judgment of the Appellate Division is affirmed. We do not retain jurisdiction.

CLIFFORD, J., dissenting.

It is not entirely clear to me what Disraeli had in mind when he observed that there are two things the public should never see being made: sausage and the law.[1] But I venture the notion that the remark aptly fits the process in which the Court has engaged today.

We have before us in *N.J.S.A.* 18A:37–3 a statutory relic, created but a few short years after the Civil War, prior even to the adoption of the Fourteenth Amendment, in the "spare-the-rod" era. There is not the faintest hint of what moved the legislature to come up with this curiosity, other than some vague idea of discipline of pupils in the public schools. It has until recently been permitted to lie, unused, unrecognized, and un-wanted, in the state of desuetude to which it had mercifully been consigned. When a modern-day legislature sought to address the problem of malicious acts of vandalism by young people, it wisely ran right over this sorry reminder of times past and enacted *L.* 1965, *c.* 111, currently codified in *N.J.S.A.* 2A:53–14 and 15, and supplemented it by *L.* 1970, *c.* 246, found in *N.J.S.A.* 2A:53–16 and 17. These statutes represent a bal-anced treatment of the nexus between "vandalism" and "paren-tal neglect of child-supervision." See *N.J.S.A.* 2A:53A–14.

In the meantime their forebearer remains on the books in *N.J.S.A.* 18A:37–3. Rather than deliver to it the sockdolager it so richly deserves, the Court encourages its resurrection. It does so not by interpreting that enactment but by inventing a new one. It thereby not only gives its blessing to unsound policy—the statute will, I suspect, impact largely on the poor and can be used to visit liability upon the parents of children who have remained immune to their parents' best efforts at the world's most difficult job, parenting—but also perpetuates an

---

[1]See *Matter of Estate of Shields*, 224 Kan. 604, 605, 584 P.2d 139, 140 (1978) (McFarland, J., dissenting). The epigram is sometimes attributed to Bis-marck, even though it does not sound much like the Iron Chancellor. See *In re Petition of Graham*, 104 So.2d 16, 18 (Fla.1958).

enactment riddled with constitutional defects. Those defects are spelled out in Judge Crane's perceptive dissent below, 173 *N.J.Super.* at 212. I agree with him in all respects and vote to reverse.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK —6.

*For reversal*—Justice CLIFFORD—1.