RANDOLPH, APPELLANT, *v.* GRANGE MUTUAL. CASUALTY CO., APPELLEE.

[Cite as Randolf v. Grange Mut. Cas. Co. (1979),
57 Ohio St. 2d 25.]

(No. 78-696—Decided February 21, 1979.)

26

*Mr. Gerald J. Glinsek* and *Mr. Richard L. Aynes,* for appellant.

*Buckingham, Doolittle & Burroughs Co., L. P. A.,* and *Mr. Orville L. Reed,* for appellee.

PAUL W. BROWN, J. The issue certified to this court in essence is whether Section II, Coverage E, of appellant's insurance contract provides coverage for liability under R. C. 3109.09 for damage intentionally and willfully caused by one separately insured under the same policy.

The contract provides that the company shall pay "* * * all sums which the Insured shall become legally obligated to pay as damages because of * * * *property damage* * * * *caused by an occurrence.*" (Emphasis added.) Section II, Coverage E. Occurrence is defined as "an accident" in the "Additional Definitions" section of the policy. "Accident" is not defined in the contract.

Appellee concludes from these provisions that appellant's liability is not within the scope of coverage af-

forded under Section II, Coverage E. The insurance company argues that "accident" connotes an unexpected event, that property damage resulting from an intentional act cannot be unexpected and that, therefore, the property damage at issue was not the result of "an accident" or "caused by an occurrence," a precondition to coverage under this provision of the contract.

Appellant does not dispute that the act which caused the damage was willful and intentional, and thus not within the ambit of Section II, Coverage E as to appellant's son, Edward. Rather, appellant argues that since both he and Edward are separately insured under the contract, Edward's lack of coverage does not necessarily preclude appellant from being insured under the policy. Further, appellant contends that because Edward's conduct was unexpected as to him, appellant's statutory *liability* was "an accident" or "caused by an occurrence."

Appellant misreads the contract. While it may be accurately said that the insured's *liability* under R. C. 3109.-09 was the result of an "occurrence," this is immaterial in view of the specific language of Section II, Coverage E, which defines coverage in terms of "*damage* * * * caused by an occurrence," not *liability* caused by an occurrence. The distinction is well illustrated in this cause. From the fact that *liability* may have been unexpected or "accidental" to appellant, it does not follow that the *damage* was unexpected or accidentally caused. Indeed, appellant concedes that the damage was not the product of an accident but of Edward's willful and intentional misconduct. Since the contract makes "damage [not liability] * * * caused by an occurrence" a qualification of the insurer's liability, it would appear that Section II, Coverage E does not insure appellant for liability incurred pursuant to R. C. 3109.09.

Nevertheless, it is undisputed that the Supplementary Coverages provision under which $250 was paid to appellant by appellee contains language allowing an element of intention within the meaning of "occurrence," as used

therein. The relevant portion of this provision states:

"This Company will, at its option, either pay for the actual cash value of property damaged or destroyed during the policy period of any Insured or repair or replace such property with other property of like quality and kind, but in no event shall this Company's limit of liability exceed $250 in any one *occurrence.*

"This Coverage does not apply to damage to or destruction of property:

"a. caused intentionally by an insured who has attained the age of 13;" (Emphasis added.)

Thus, there may be an "occurrence" under the Supplementary Coverages provision of the policy although damage was intentionally caused by an insured (under age 13). The issue becomes whether this element of intent should be understood as changing the meaning of "occurrence" in Section II, Coverage E, so as to allow recovery for property damage intentionally caused. Stated differently, does "occurrence" within Section II, Coverage E now mean more than a mere "accident" in view of the use of the word "occurrence" in the Supplementary Coverages provision?

In resolving this issue, we face competing rules of construction used to interpret ambiguous or conflicting portions of a contract. On the one hand, the rule is that doubtful language should be construed in favor of the insured. *Great American Mut. Indemnity Co.* v. *Jones* (1924), 111 Ohio St. 84. On the other hand, language in an insurance contract is to be understood in its ordinary, usual or popular sense, *Bobier* v. *National Cas. Co.* (1944), 143 Ohio St. 215, and in such a way as to reflect the presumed intent of the parties, *Stickel* v. *Excess Ins. Co. of America* (1939), 136 Ohio St. 49. Indeed, the rule of liberal construction of ambiguities in favor of the insured is inapplicable where the result obtained would not conceivably have been intended by the parties. *Burns* v. *Employers' Liability Assur. Corp.* (1938), 134 Ohio St. 222, 230.

With these rules of construction in mind, this court

finds that the word "occurrence," defined as "an accident," was intended to mean just that—an unexpected, unforeseeable event. The fact that the Supplemental Coverages provision imposes coverage even though an occurrence is intentionally caused cannot be construed to grant additional coverage under the provisions of Section II, Coverage E of the policy. This construction comports with the presumed intent of the parties without distorting the primary obligation of the insurer, under Section II, Coverage E, for the sake of a careless choice of words by the appellee.

For the foregoing reasons, this court finds that a homeowner's insurance policy that provides coverage for "property damage caused by an *occurrence,*" which latter term is defined in the policy as "an accident," does not obligate the insurer to pay the claim of an insured under the policy who incurs liability under R. C. 3109.09 for intentional damage caused by another separately insured under the same policy, absent other clear indicia of such obligation in the insurance contract.

Accordingly, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed.*

HERBERT and SWEENEY, JJ., concur.
WHITESIDE, J., concurs in the syllabus and judgment.
CELEBREZZE, C. J., and W. BROWN, J., dissent.
HOLMES, J., not participating.

WHITESIDE, J., of the Tenth Appellate District, sitting for LOCHER, J.

WHITESIDE, J., concurring. If the nature of the occurrence is determined from the viewpoint of appellant-parent, both the occurrence itself and the damage resulting therefrom were caused by "an accident" within the contemplation of the policy since, as to the parent, the event causing the

damage (the son's intentional act) was undesigned, sudden, and unexpected, there being no indication the parent should have anticipated his son's act.

On the other hand, if the nature of the occurrence is determined from the viewpoint of the minor son, the damage was not caused by an accident, since the son must have willfully caused the damage for liability to be imposed upon his parent by R. C. 3109.09.

Were this an open question, a cogent argument could be made that, under the policy, the nature of the occurrence should be determined from the parent's viewpoint, rather than that of his son. However, the second paragraph of the syllabus of *Rothman* v. *Metropolitan Cas. Ins. Co.* (1938), 134 Ohio St. 241, holds that:

"The state of the will of the person by whose agency an injury is caused, rather than that of the injured person, determines whether an injury is accidental within the provisions of a policy indemnifying the insured against loss resulting from claims for accidental injuries caused by the operation of insured's automobile."

A similar result was reached in *Commonwealth Cas. Co.* v. *Headers* (1928), 118 Ohio St. 429.

Since I find no logical distinction between the circumstances and the policy involved herein and those in *Rothman*, I am compelled to concur in the judgment, and, with that understanding, concur in the syllabus, because to do otherwise would in my opinion require the overruling, or at least modification, of the second paragraph of the syllabus of *Rothman*.