**GARGALLO, Appellant,**

**v.**

**NATIONWIDE GENERAL INSURANCE COMPANY, Appellee.**

[Cite as *Gargallo v. Nationwide Gen. Ins. Co.* (1991), 74 Ohio App.3d 290.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–122.

Decided May 28, 1991.

*Miguel A. Gargallo, pro se.*

*Mary F. Coridan; Crabbe, Brown, Jones, Potts & Schmidt, Robert Buchbinder* and *Francesca M. Tosi,* for appellee.

McCormac, Judge.

Plaintiff-appellant, Miguel A. Gargallo, appeals from the judgment of the Franklin County Municipal Court, Small Claims Division, in favor of defendant-appellee, Nationwide General Insurance Company, and raises the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred in failing to find that the damage caused to Plaintiff's parked car was covered by the 'comprehensive' portion of his automobile insurance policy.

"Assignment of Error No. 2:

"The trial court erred in failing to admit Plaintiff's Exhibit 3.

"Assignment of Error No. 3:

"The trial court erred in failing to mail to Plaintiff a copy of the Referee's Report.

"Assignment of Error No. 4:

"The trial court erred in failing to afford Plaintiff the time provided by the Ohio Rules of Civil Procedure for objecting to the Referee's Report.

"Assignment of Error No. 5:

"The trial court erred in failing to afford Plaintiff the Ohio constitutional guarantee of 'due course of law' and the federal constitutional guarantee of 'due process of law.' "

Also before the court is appellee's motion to dismiss predicated on its contention that appellant's notice of appeal was not timely filed.

The facts surrounding this case are, for the most part, undisputed. Appellant was shopping at a Meijer's store when a shopping cart struck the side of his automobile which was parked in the store's parking lot. Appellant was in the store at the time and cannot positively identify what force propelled the cart into his car. It is his contention that, since it was a windy day, it must have been the wind. Appellee contends that it could have been another force (the grade of the parking lot, another shopper, etc.) and that appellant has failed to prove what force put the cart into motion.

As a result of the impact, appellant's automobile suffered $242.59 in damages. Appellant maintained automobile insurance through appellee with both "collision" and "comprehensive" provisions. Appellee determined that the damage was caused by a collision between the cart and the automobile and, therefore, tendered payment to appellant in the amount of damages, less a $50 deductible applicable only to the collision coverage. Appellant maintains that the loss was not a collision and should be included under his comprehensive coverage entitling him to payment in full of the damages to his car. Therefore, the primary issue presented is whether a "collision," as described in the insurance policy, occurred when a shopping cart, propelled by an unknown force, struck the side of appellant's parked unattended automobile.

■ We first address appellee's motion to dismiss. Appellant filed his complaint in the Franklin County Municipal Court, Small Claims Division, on July 27, 1990. On September 6, 1990, the matter was heard by a referee who filed her report, recommending that the court dismiss appellant's complaint, on November 21, 1990. On November 27, a judgment entry was filed by the

trial court adopting the referee's recommendation but not the referee's findings. On December 4, 1990, appellant filed a motion to vacate the judgment entry, along with a timely request for findings of fact and conclusions of law. Appellant's motions were overruled on January 9, 1991, in which entry the court stated that it had complied with Civ.R. 52 by adoption of the referee's recommendation. Appellant filed his notice of appeal to this court on February 1, 1991.

■ App.R. 4 provides that a party must file his notice of appeal within thirty days of the entry from which he is appealing. In this case, the referee's report was filed on November 21. Pursuant to Civ.R. 53(E)(7), a court may enter judgment immediately upon the filing of the referee's findings and recommendations. However, this will not act to bar a party from filing objections which, if filed, will operate as a stay until the court rules on the objections. Appellant did not technically file objections but, rather, filed a motion to vacate which was ruled on by the trial court on January 9, 1991. Whether we treat appellant's motion to vacate as a formal objection, thereby staying the final appealable order until January 9, the outcome will be the same. A timely request for findings of fact and conclusions of law was filed. The trial court had not previously rendered findings, only having adopted the referee's recommendation but not specifically the findings. App.R. 4(A) suspends the time for filing a notice of appeal until the trial court grants or denies a motion for findings of fact and conclusions of law under Civ.R. 52. The appeal was filed within thirty days of the judgment entry containing that ruling.

■ Appellant's second, third, fourth, and fifth assignments of error all involve claimed procedural irregularities which will be discussed next. By his second assignment of error, appellant argues that the trial court erred by failing to admit a renewal billing notice offered by appellant as exhibit 3. A trial court is vested with broad discretion in the admission or exclusion of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126. A trial court's ruling will not be overturned absent a showing that the trial court abused its discretion. The exhibit appellant sought to have admitted merely establishes the types of coverage for which he paid. The amount and type of coverage appellant maintained was conceded by appellee and, therefore, was not at issue. The renewal notice was redundant and immaterial. The trial court was not clearly wrong in refusing its admission and there was no prejudice to appellant.

Appellant's third and fourth assignments of error are interrelated and will be discussed together. He argues that the trial court erred by failing to mail

a copy of the referee's report and that, since the report was allegedly never mailed, he was not afforded the time to file his objections.

Even if the report was not mailed to appellant and the court was under a duty to do so, appellant has failed to show any prejudice. Appellant filed his motion to vacate within fourteen days after the referee's report was filed. Therefore, he had actual knowledge of the ruling in sufficient time to object. No prejudice has resulted since there was no factual dispute and the legal issues were clear.

■ In his fifth assignment of error, appellant challenges the failure to mail the referee's report on constitutional grounds. As we have already addressed, there was no prejudice to appellant. Appellant also argues that, since one judge signed the original entry adopting the referee's report and a second judge ruled on his motion to vacate, the "single-judge rule" prescribed by M.C.Sup.R. 3(B)(2) has been violated and a reversal is warranted.

When this case was originally filed, it was referred to a referee as is the proper procedure in a court of small claims. The referee's ultimate report was adopted by the trial court shortly after it was filed. Up until this point, no judge had been assigned to the case. It was not until appellant filed his motion to vacate that any assignment was made. Therefore, only one judge was ever assigned to the case and M.C.Sup.R. 3(B)(2) has not been violated.

Appellant's second, third, fourth, and fifth assignments of error are overruled.

■ The principal issue presented by this case is contained in appellant's first assignment of error. The question is how "collision" should be defined where a policy provides broad comprehensive coverage with an exclusion for "collision" to which a deductible applies.

Typically, it has been held that, where language in an insurance policy is susceptible of differing interpretations, doubt should be resolved in favor of the insured since the language employed was chosen by the insurer. *Blohm v. Cincinnati Ins. Co.* (1988), 39 Ohio St.3d 63, 529 N.E.2d 433; *Munchick v. Fidelity & Cas. Co. of New York* (1965), 2 Ohio St.2d 303, 31 O.O.2d 569, 209 N.E.2d 167. On the other hand:

" * * * 'When words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result. * * *' * * * '" *Blohm, supra,* 39 Ohio St.3d at 66, 529 N.E.2d 433, citing *Olmstead v. Lumbermens Mut. Ins. Co.* (1970), 22 Ohio St.2d 212, 216, 51 O.O.2d 285, 288, 259 N.E.2d 123, 126.

It has also been held that in the case of policy exclusions that which is not clearly excluded is included. *Home Indemn. Co. v. Plymouth* (1945), 146 Ohio St. 96, 32 O.O. 30, 64 N.E.2d 248. However, the baseline consideration is that an insurance policy is like any other contract and it should be interpreted to reflect the presumed intent of the parties. *Randolf v. Grange Mut. Cas. Co.* (1979), 57 Ohio St.2d 25, 11 O.O.3d 110, 385 N.E.2d 1305.

The contract of insurance entered into between the parties to this action provided for both comprehensive and collision coverage. The comprehensive provision states:

" * * * To pay for direct and accidental loss of or damage to the described vehicle and its equipment other than by collision or upset. Loss caused by actual contact with a bird or an animal shall be deemed to be loss by Comprehensive instead of Collision. * * * "

Collision coverage is then applicable to any event determined to be caused by collision or upset. Only one page of the policy is included in the record and no definition of "collision" is provided on that page. We must, therefore, assume for purposes of this appeal that the policy does not provide a definition.

Appellee argues that "collision" has a plain and ordinary meaning and that, therefore, no ambiguity exists and no interpretation is necessary. Appellee's position is belied by the conflicting interpretations given the word "collision" by courts who have been presented with the issue. One line of cases defines the term broadly, typically relying on a dictionary definition. Appellee cites *Great American Mut. Indemn. Co. v. Jones* (1924), 111 Ohio St. 84, 144 N.E. 596, for the proposition that Ohio has adopted a broad definition of "collision." In *Jones*, the Supreme Court did speak of collision as " * * * 'the act of striking or dashing together; a striking together of two bodies, the meeting and mutual striking or clashing of two or more moving bodies or a moving body with a stationary one.' * * * " *Id.* at 86–87, 144 N.E. 596. However, that case did not strictly turn upon any one term's definition but, rather, on general rules of contract interpretation.

The *Jones* court exhaustively reviewed many cases, including *Bell v. American Ins. Co.* (1921), 173 Wis. 533, 181 N.W. 733, which is generally cited as the leading case rejecting the broad dictionary definition for a more common sense approach. Included in *Jones* is the following passage:

" * * * We would be more disposed to concur in the observations, reasoning and conclusion of the Wisconsin Supreme Court had not the insurer in the policy under consideration in this case inserted the words of exception and exclusion which strongly indicate the proposed construction and application of

the terms 'collision' and 'object' in their broad and comprehensive sense as above defined." *Jones, supra,* 111 Ohio St. at 91, 144 N.E. 596.

Therefore, we do not believe that *Jones* should be cited for the broad proposition that appellee advances.

Other cases have rejected the broad definition and more narrowly interpreted collision. Included in this category are: *Bell, supra; New Jersey Ins. Co. v. Young* (C.A.9, 1923), 290 F. 155; *Aetna Cas. & Surety Co. v. Cartmel* (1924), 87 Fla. 495, 100 So. 802; and *Ohio Hardware Mut. Ins. Co. v. Sparks* (1938), 57 Ga.App. 830, 196 S.E. 915. See Annotation (1952), 23 A.L.R.2d 398, and 5 Appleman, Insurance Law and Practice (1945), Section 3202 *et seq.,* for a more exhaustive list of citations.

The Wisconsin court used the analogy of an apple falling to the earth. The apple's impact with the earth would technically constitute a collision, as that term is defined in the dictionary, but, in common parlance, no man would speak of the impact as a collision.

One characteristic that is common with most of the cited cases is that coverage hinged on the court's definition of "collision." In the present case, the issue is not the absolute availability of coverage but what type, partial or total, should be available to the insured. This case is novel, not only factually, but also in that it concerns a conflict between comprehensive and collision coverage which is not the exact issue in most other cases on this subject.

Most of the cited cases ultimately rested on fundamental concepts of construction; principally, that ambiguities are to be construed in favor of the insured. Generally, even when a broad definition was adopted, coverage was held to exist. See *Jones, supra.*

If we were to categorically embrace the definition of "collision" advanced by appellee, we could potentially be confronted with absurd results in future cases. If "collision" is broadly defined as the striking together of two objects, then any striking could be termed a collision. Conceivably, this can include acts of God, such as the apple hypothetically posed by the Wisconsin court, or an act of vandalism as when a car's hood is struck by a hammer or a baseball bat. We cannot believe that instances such as these were contemplated as collisions by the parties to the contract.

Instead of formulating a hard and fast definition, we believe that the better course is to follow the lead of other courts and to rely on basic principles of construction. Appellee was the drafter of this contract and could have included a definition of "collision." Furthermore, since the collision endorsement of a policy is actually in the nature of an exclusion from the broader comprehensive coverage, that which is not specifically excluded

should be included. It is unlikely that an ordinary person would consider contact between a shopping cart and an unattended automobile a collision, whether it occurred through the cart rolling down a slope or by being wind propelled. We will not strain the meaning of collision to include situations not generally considered by an ordinary person to be an automobile collision in the absence of an unambiguous provision of the policy.

We conclude that, when a policy of insurance provides both collision and comprehensive provisions and collision is styled as an exclusion from comprehensive coverage in the event of collision or upset of the covered vehicle, contact between a parked automobile and a shopping cart, where the means of propulsion of the cart are unknown, is not a "collision."

Appellant's first assignment of error is sustained.

Appellee's motion to dismiss is overruled, as are appellant's second, third, fourth, and fifth assignments of error. Appellant's first assignment of error is sustained, and the judgment of the trial court is reversed. The cause is remanded to the trial court with instructions to enter judgment for appellant in the amount of $50 and costs.

*Motion to dismiss overruled;*
*judgment reversed*
*and cause remanded.*

WHITESIDE and PETREE, JJ., concur.