284 N.J. Super. 622 (1995)
666 A.2d 182
PROPERTY CASUALTY COMPANY OF MCA, PLAINTIFF-RESPONDENT,
v.
KEVIN G. CONWAY, INDIVIDUALLY AND AS GUARDIAN AD LITEM AND NATURAL PARENT OF RYAN CONWAY, DEFENDANT-APPELLANT, AND YW/YMCA OF RIDGEWOOD, NEW JERSEY, A CHARITABLE CORPORATION, DEFENDANT-RESPONDENT, AND THE BOARD OF EDUCATION OF RIDGEWOOD, NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1995.
Decided October 27, 1995.
*623 Before Judges HAVEY, D'ANNUNZIO and CONLEY.
Kevin G. Conway, appellant, argued the cause pro se.
Alan H. Bernstein argued the cause for respondent Property Casualty Company of MCA (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Mr. Bernstein, of counsel; Melissa E. Flax, on the brief).
John Badagliacca argued the cause for YMCA of Ridgewood (Garrity, Graham & Favetta, attorneys; Mr. Badagliacca, of counsel and on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
In 1991, Ryan Conway, then fifteen years of age, and a friend, P.V., intentionally damaged a building owned by the Board of Education of Ridgewood, New Jersey and leased to the YW/YMCA of Ridgewood, New Jersey (hereafter the Association). The Association used the building as a day-care center for children. The Board and the Association asserted separate claims for damages. Those claims involve Kevin Conway's vicarious liability as Ryan's father under N.J.S.A. 18A:37-3, which provides:
The parents or guardian of any minor who shall injure any public or nonpublic school property shall be liable for damages for the amount of the injury to be collected by the board of education of the district or the owner of the premises in any court of competent jurisdiction, together with costs of suit.
The issue is whether Kevin Conway's homeowner's insurance policy, issued by plaintiff, Property Casualty Company of MCA (hereafter PCC), provides coverage for the claims made under this statute. PCC commenced this declaratory judgment action to decide the issue, and the trial court resolved it in favor of the insurer. Kevin Conway appeals, and we reverse.
*624 By way of background, we relate that the Association has filed a complaint seeking damages as a result of this incident. It alleges in count two that Kevin Conway is liable to it under N.J.S.A. 18A:37-3. In count three, the Association asserts a claim against Kevin Conway based on N.J.S.A. 2A:53A-15. This statute establishes parental liability for the acts of a minor child if the parent "fails or neglects to exercise reasonable supervision and control of the conduct of such infant...." N.J.S.A. 2A:53A-15. PCC concedes coverage under its homeowner's policy for the Association's claim under Title 2A, but the insurer contests coverage for the vicarious liability claim under Title 18A. Kevin Conway paid the Board of Education for the damages it sustained. He filed a counterclaim in PCC's declaratory judgment action seeking reimbursement from PCC as well as a declaration that PCC must provide coverage for the vicarious liability claim asserted by the Association.
The trial court determined that PCC's policy does not cover the claim asserted under the vicarious liability statute because Ryan's act of vandalism was an intentional act and, therefore, it was not an "occurrence" within the meaning of the policy.
PCC issued the policy to Kevin and Patricia Conway. Ryan Conway fell within the policy's definition of an insured because he was a resident of the household and a relative of the named insureds. The parties agree that Ryan is not covered for these claims because he committed intentional acts of vandalism.
The policy provides liability coverage, in the following language:
If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which the insured is legally liable;
The definition portion of the policy defines occurrence as "an accident, including exposure to conditions, which results, during the policy period, in bodily injury or property damage."
*625 The policy specifically excludes liability coverage for bodily injury or property damage "which is expected or intended by the insured."
The policy also includes a severability clause. It states:

Severability of Insurance. This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.
PCC contends that the damage Ryan caused was not an accident because it was intentional and, therefore, the incident giving rise to the damage cannot be deemed an occurrence within the meaning of the policy. Consequently, there is no coverage for Kevin Conway's vicarious liability under N.J.S.A. 18A:37-3.
This issue is one of first impression in New Jersey. However, several New Jersey opinions inform our analysis in this case. Lansco v. Dept. of Envtl. Protection, 138 N.J. Super. 275, 350 A.2d 520 (Ch.Div. 1975), aff'd o.b., 145 N.J. Super. 433, 368 A.2d 363 (App.Div. 1976), is helpful because it involved insurance coverage for liability imposed on Lansco by statute. Under the statute, Lansco was strictly liable for an oil spill caused by an unidentified third party who had unlocked and opened the valves controlling the flow of petroleum from Lansco's storage tanks, spilling approximately 14,000 gallons of petroleum on Lansco's property. The oil eventually migrated into the Hackensack River. The policy in question excluded coverage for the discharge or release of pollutants unless the spill was "sudden and accidental." The carrier denied coverage in part because it contended that the discharge was neither sudden nor accidental.
The Chancery Division disagreed. The court adopted a dictionary definition of "accidental" as an act "happening unexpectedly or by chance; taking place not according to usual course." Id. at 282, 350 A.2d 520 (citations omitted). The Chancery Division, in an observation pertinent to the present case, stated that "under the definition of `occurrence' contained in the policy, whether the occurrence is accidental must be viewed from the standpoint of the insured, and since the oil spill was neither expected nor intended by Lansco, it follows that the spill was sudden and accidental *626 under the exclusion clause even if caused by the deliberate act of a third party." Ibid.
In Howell v. Ohio Casualty Ins. Co., 130 N.J. Super. 350, 327 A.2d 240 (App.Div. 1974), we determined that a fire insurance policy covered an innocent insured's losses even though another insured, her husband, had destroyed the family home by an act of arson. We ruled that the responsibility for the arson "is several and separate rather than joint, and the husband's fraud cannot be attributed or imputed to the wife who is not implicated therein. Accordingly, the fraud of the co-insured husband does not void the policy as to plaintiff wife." Id. at 354, 327 A.2d 240 (citations omitted).
We also made the following general observation in Howell:
With respect to a fire insurance policy covering the interests of more than one insured, however, there is much to commend the view that, unless the terms thereof are plainly to the contrary and in some fashion clearly called to the attention of the insureds, the obligation of the carrier should be considered several as to each person insured, and the fraud or misconduct of one insured should not bar recovery by the innocent coinsureds to the extent of their respective interests in the property involved.
[Id. at 355-56, 327 A.2d 240.]
In the present case, PCC adopted this general principle by including in the policy, as previously indicated, a severability clause which provides that the insurance "applies separately to each insured."
We conclude that whether the incident giving rise to Kevin Conway's liability was an occurrence within the meaning of the policy must be determined from Kevin Conway's perspective. We further conclude that from Kevin Conway's perspective Ryan's vandalism of the school building was an unintended and unexpected event, i.e., an accident. Our conclusion is consistent with Lansco, supra, and Howell, supra, and with our Supreme Court's forgiving and benevolent approach to similar coverage issues. See e.g., Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 183, 607 A.2d 1255 (1992). In Voorhees, the Court held that an injury is accidental, even if the act that caused it was intentional, if the *627 wrongdoer did not intend or expect to cause an injury. Id. at 183, 607 A.2d 1255. The Court further ruled that absent exceptional circumstances, courts "will look to the insured's subjective intent to determine intent to injure." Id. at 185, 607 A.2d 1255. See also Malanga v. Manufacturers Casualty Ins. Co., 28 N.J. 220, 146 A.2d 105 (1958) (enforcing coverage for innocent partner and partnership under liability policy which defined assault and battery as an accident unless it was committed by or at the direction of an insured; partner who committed the battery excluded from coverage); Prudential Property and Casualty Ins. Co. v. Karlinski, 251 N.J. Super. 457, 464, 598 A.2d 918 (App.Div. 1991) (reversing summary judgment in favor of insurer and holding that coverage issue required a factual inquiry into the actual intent of the tortfeasor to cause the specific injury.).
Our expansive approach to liability coverage issues is founded in part, on the policy concern that victims be compensated "with insurance proceeds to the extent that that compensation will not condone and encourage intentionally-wrongful conduct." Voorhees, supra, 128 N.J. at 181, 607 A.2d 1255; see also Ambassador Ins. Co. v. Montes, 76 N.J. 477, 483, 388 A.2d 603 (1978) (holding that liability insurer must pay innocent victims of insured's arson). N.J.S.A. 18A:37-3 is based, in part, on that policy. Board of Education of Piscataway Tp. v. Caffiero, 86 N.J. 308, 431 A.2d 799 (1981), appeal dismissed, 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed.2d 470 (1981). In that case, the Supreme Court rejected a constitutional attack on the vicarious liability statute. The Court held that the Legislature enacted the statute "to compensate the public and to deter delinquent behavior...." Id. at 319-20, 431 A.2d 799. The Court further held that the statute was a reasonable and rational method of achieving those goals. Our determination that PCC's policy provides coverage for Kevin Conway furthers the general goal of compensation to victims, as well as the specific goal of compensation for damage to school buildings.
Arguably, the provision of coverage to Kevin Conway dilutes the deterrence element of the statute's presumed rationale. This *628 argument has a surface appeal only. The issue in this case is whether PCC's policy, through a narrow definition of an "occurrence," precludes coverage of this vicarious liability claim. Resolving this issue in favor of PCC would not prevent the specific inclusion of coverage for this type of claim in any other policies, and we perceive no public policy reason for prohibiting such coverage to an innocent insured. See Malanga v. Manufacturers Casualty Ins. Co., supra, 28 N.J. at 225, 146 A.2d 105 (enforcing coverage for innocent partner and partnership does not violate public policy; partner who committed the battery excluded from coverage).
The trial judge and PCC rely on Randolf v. Grange Mutual Casualty Co., 57 Ohio St.2d 25, 385 N.E.2d 1305 (1979). That case involved an Ohio statute which imposed liability, for up to $2,000 in compensatory damages, on the parents of a minor who willfully damaged the property of another. The issue was whether the parents' liability policy covered the claim against them. The Ohio Supreme Court held that the incident was not covered because the policy "defines coverage in terms of `damage ... caused by an occurrence' not liability caused by an occurrence." Id. at 27, 385 N.E.2d at 1306. The court rejected the parents' contention that coverage should be evaluated from their perspective. The court ruled that the damage, as contrasted with the parents' liability, was not the result of an accident and, therefore, the parents could not look to the policy for protection.
It is not apparent from the opinion whether the Randolphs' policy contained a definition of "occurrence" or a severability clause. In any event, we respectfully disagree with the Ohio Supreme Court's reasoning. Cf. Unigard Mut. Ins. Co. v. Argonaut Ins. Co., 20 Wash. App. 261, 579 P.2d 1015 (1978) (holding that the policy covers parents for claims against them caused by their son's intentional wrongdoing; coverage is "separable").
PCC does not rely on the clause excluding coverage for damage "which is expected or intended by the insured," and, therefore, we do not address it. In light of our determination that PCC's policy *629 covers the vicarious liability claim, we do not find it necessary to address the apparent anomaly created by PCC's extension of coverage for the claim asserted against Kevin Conway under N.J.S.A. 2A:53A-15, while denying coverage for the vicarious liability claim.
Reversed.