687 A.2d 729

PROPERTY CASUALTY COMPANY OF MCA, PLAINTIFF–APPELLANT, v. KEVIN G. CONWAY, INDIVIDUALLY AND AS GUARDIAN AD LITEM AND NATURAL PARENT OF RYAN CONWAY, DEFENDANT–RESPONDENT, AND THE BOARD OF EDUCATION OF RIDGEWOOD, NEW JERSEY, DEFENDANT, AND YW/YMCA OF RIDGEWOOD, NEW JERSEY, A CHARITABLE ORGANIZATION, DEFENDANT–RESPONDENT.

Argued October 21, 1996—Decided January 28, 1997.

*Alan H. Bernstein* argued the cause for plaintiff-appellant (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Melissa E. Flax,* on the brief).

*Kevin G. Conway* argued the cause pro se.

*John Badagliacca* submitted a letter in lieu of brief on behalf of YW/YMCA of Ridgewood, New Jersey (*Garrity, Graham & Favetta,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The issue is whether a homeowner's policy covers the vicarious liability of a named insured arising under *N.J.S.A.* 18A:37-3 for the intentional vandalism of a public school by the homeowner's minor son. The Law Division ruled that the policy did not provide coverage, but the Appellate Division reversed. 284 *N.J.Super.* 622, 666 *A.*2d 182 (1995).

We granted certification, 143 *N.J.* 517, 673 *A.*2d 276 (1996), and now affirm.

## I.

Defendant, Kevin Conway ("Conway" or "the insured") is insured under a homeowner's policy issued by Property Casualty Co. ("PCC"). The policy provides:

DEFINITIONS

3. "insured" means you and residents of your household who are:

a. your relatives ...

* * *

5. "occurrence" means an accident, including exposure to conditions, which results, during the policy period, in bodily injury or property damage.

* * *

SECTION II—EXCLUSIONS

1. Coverage E—Personal Liability ... do[es] not apply to bodily injury or property damage:

a. which is expected or intended by the insured; ...

SECTION II—CONDITIONS

2. Severability of Insurance. This insurance applies separately to each insured.

PCC's policy covers liability for property damage caused by an "occurrence," which the policy defines as an "accident." The policy, however, does not define "accident." It also does not state whether the determination that an event is unexpected or unintended should be from the perspective of all those covered under the policy or from that of only the named insured.

The facts in the underlying action highlight the significance of those omissions. On November 29, 1991, Conway's fifteen-year-old son, acting without parental permission, took some beer from the Conway residence. After drinking the beer, he and another juvenile broke into the Glen School, which is owned by the Ridgewood Board of Education (the "Board") and leased to the YMCA of Ridgewood (the "YMCA"). According to the YMCA, it uses the property as a child-care center and kindergarten. The two juveniles caused considerable damage to the school. The Board and YMCA respectively claimed damages of $1,702 and $9,582. Pursuant to a restitution order of the Family Part,

Conway paid one-half of the Board's damages, and the other juvenile's family paid the balance.

The YMCA instituted an action against Conway to recover for damage to its property. In one count, the YMCA claims that Conway is liable under *N.J.S.A.* 2A:53A–15, which imposes liability on parents for the acts of a minor child if the parent "fails or neglects to exercise reasonable supervision and control of the conduct of such infant...." PCC concedes that its policy provides coverage for the claim under *N.J.S.A.* 2A:53A–15.

The YMCA also claims that Conway is vicariously liable for his son's acts under *N.J.S.A.* 18A:37–3, which provides:

> The parents or guardian of any minor who shall injure any public or nonpublic school property shall be liable for damages for the amount of the injury to be collected by the board of education of the district or the owner of the premises in any court of competent jurisdiction, together with costs of suit.

In the present action, PCC seeks a declaratory judgment that its policy does not cover Conway's liability because his son's vandalism of the school property was not an "accident" within the meaning of the policy. Conway's son is covered under the policy as a relative who resided in Conway's household. From the son's perspective, the damage was intended and expected and, therefore, not an "accident" or "occurrence." From Conway's perspective, however, his son's vandalism was both unintended and unexpected and, therefore, would be covered under the policy. The question is whether we should view the son's acts of vandalism from his perspective or from that of his father.

## II.

One of the most basic precepts governing judicial construction of insurance policies is that courts construe ambiguities liberally in favor of the insured. *Longobardi v. Chubb Ins. Co.*, 121 *N.J.* 530, 537, 582 *A.2d* 1257 (1990). Insurers write the policies, and fairness suggests that insureds should receive the benefit of any ambiguities. By failing to define "accident," PCC has introduced ambiguity into the definition of "occurrence."

Consequently, in defining "accident" and "occurrence" we shall construe any ambiguity against the insurer and in favor of the insured.

■ Another precept of statutory construction is that courts give terms their ordinary meaning. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 556, 362 *A.2d* 13 (1976). That precept suggests that merely because an act is intentional from the perspective of one insured, it need not be expected from that of another insured.

■ Basically, an accident is an unintended or unexpected event. Consistent with that premise, *Webster's Third New International Dictionary* (1976) includes among the definitions of an "accident": "an event or condition occurring by chance or arising from unknown or remote causes ... an unforeseen unplanned event or condition ... a [usually] sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result ... an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief...."

■ Whether a homeowner's policy covers a parent's vicarious liability under *N.J.S.A.* 18A:37–3 for a child's vandalism of a school is an issue of first impression. *See Piscataway Tp. Bd. of Educ. v. Caffiero,* 86 *N.J.* 308, 321 n. 8, 431 *A.2d* 799 (reserving decision on the issue), *appeal dismissed,* 454 *U.S.* 1025, 102 *S.Ct.* 560, 70 *L.Ed.2d* 470 (1981). We gain insight into the proper resolution by considering analogous decisions of the lower courts. In *Lansco v. Department of Envtl. Protection,* 138 *N.J.Super.* 275, 350 *A.2d* 520 (Ch.Div.1975), *aff'd o.b.,* 145 *N.J.Super.* 433, 368 *A.2d* 363 (App. Div.1976), *certif. denied* 73 *N.J.* 57, 372 *A.2d* 322 (1977), a third party had tampered with Lansco's oil tanks, which leaked petroleum on its property and ultimately into the Hackensack River. The Chancery Division required Lansco's insurer to cover the

damage. Although Lansco was strictly liable under *N.J.S.A.* 23:5–28, the court viewed the intentional act from the perspective of the insured. *Id.* at 282, 350 *A.*2d 520. Because a third party caused the leak, it was not expected or intended by Lansco. *Ibid.* Thus, Lansco was entitled to coverage. Similarly, in *Howell v. Ohio Cas. Ins. Co.*, 130 *N.J.Super.* 350, 354, 327 *A.*2d 240 (App.Div. 1974), the Appellate Division required a homeowner's insurer to provide coverage for a wife's loss to her personal property after her husband intentionally set fire to their home. The court ruled that the husband was responsible for the arson and that his fraud should not be imputed to his wife. *Ibid.* The implication of those opinions in this matter is that the intentional act of the insured's child should not preclude coverage for the insured's vicarious liability.

Decisions from other jurisdictions support the conclusion that a homeowner's policy covers the vicarious liability of insureds under a parental liability for the intentional acts of the insured's minor son. In *Arenson v. National Auto. and Cas. Ins. Co.*, 45 *Cal.*2d 81, 286 *P.*2d 816, 817 (1955), the named insured's minor son started a fire that damaged a school. The son, as a resident of the insured's household, satisfied the definition of an "insured." *Id.*, 286 *P.*2d at 818. In holding that the father was entitled to coverage, the court noted that he had not participated in the son's act. *Ibid.* Relying on *Arenson,* the Texas Court of Civil Appeals ruled that a homeowner's insurance covered a named insured when his son, an added insured, damaged property of another. *Walker v. Lumbermens Mut. Cas. Co.*, 491 *S.W.*2d 696, 698–99 (Tex.Civ.App.1973). The court held that the policy covered the father's vicarious statutory liability for the damage caused by his son. *Id.* at 699. Similarly, in *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.*, 20 *Wash.App.* 261, 579 *P.*2d 1015, 1017 (1978), an eleven-year-old boy set fire to a school building. The court held that the policy's exclusion for intentional acts did not exclude the parents from coverage. *Id.*, 579 *P.*2d at 1019. Although both the boy and parents were "insureds," the policy provision between the insurer and the parents was separable from that between the insurer and

the boy. *Ibid.* Hence, the parents were entitled to coverage for liability arising out of alleged negligent supervision of their son. *Ibid. See also White v. LeGendre,* 359 *So.*2d 652 (La.Ct.App.1978) (holding mother covered under homeowner's policy for vicarious statutory liability arising from son's assault and battery on a minor child).

A badly divided Ohio Supreme Court reached the contrary conclusion that a homeowner's policy did not cover a father's statutory liability for damage inflicted by his son on the property of another. *Randolf v. Grange Mut. Cas. Co.,* 57 *Ohio St.*2d 25, 385 *N.E.*2d 1305 (1979). A three-judge plurality reasoned that although the liability may have been unexpected or accidental, the damage was not. *Id.,* 385 *N.E.*2d at 1306. Therefore, the damage did not constitute an "accident" or "occurrence" within the meaning of the policy. *Id.,* 385 *N.E.*2d at 1307. We find unpersuasive the Ohio Court's emphasis on the expected nature of the damage as distinguished from the unexpected nature of the liability. The better-reasoned cases, in our opinion, are those from California, Louisiana, Texas, and Washington. *See* discussion *supra,* at 327–28, 687 *A.*2d at 731–32.

We also find unpersuasive PCC's contention that providing coverage for the insured would violate public policy by subverting the deterrent effect of vicarious parental liability under *N.J.S.A.* 18A:37–3 and by contravening the prohibition against insurance for intentional acts. *N.J.S.A.* 18A:37–3 has two goals: compensating school districts for their losses and deterring delinquent behavior. *Caffiero, supra,* 86 *N.J.* at 316, 431 *A.*2d 799. Implicit in the goal of deterrence is the premise that parents play a decisive role in raising their children. Neither the terms nor history of the statute, however, indicate that the Legislature believed that permitting parents to insure against vicarious liability would subvert the goal of deterrence. A child who causes damage to school property remains subject to parental discipline and criminal charges. Recognizing coverage for the parents, moreover, does not lead to coverage for the child who intentionally

damages school property. A child, however, is an unlikely source of funds to pay for damage. Permitting parents to insure against their vicarious liability increases the likelihood that funds will be available to compensate for damage to school property. Denying the insurance could expose parents, many of whom may be doing the best they can, to financial ruin. Parents, moreover, remain liable under *N.J.S.A.* 2A:53A–15 for the negligent supervision of children who willfully or maliciously destroy the property of another. Here, PCC concedes coverage for the negligent-supervision claim. We conclude that the appropriate balance of the goals of deterrence and compensation is to recognize coverage for vicarious parental liability under *N.J.S.A.* 18A:37–3 so parents can compensate the school for damage caused by their child. *See Voorhees v. Preferred Mut. Ins. Co.*, 128 *N.J.* 165, 181, 607 *A.*2d 1255 (1992) (balancing prohibition against insurance for willful wrongdoing against compensation of victim).

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ, and Justices POLLOCK, HANDLER, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.