Plaintiff-appellant, Elizabeth A. Aguiar, appeals the decision of the Mahoning County Court of Common Pleas denying the applicability of an insurance policy issued to appellant by defendant-appellee, State Farm Fire and Casualty Company.
On July 29, 1994, appellant, individually and as mother and natural guardian of Austin Lemme, a minor, filed a complaint against Vincent Rounds, a minor child. The complaint was subsequently amended on October 12, 1994 to include as a defendant Christine Tallman, individually and as mother and natural guardian of Vincent Rounds. The complaint alleged that on or about February 11, 1993, Rounds struck Lemme in the eye with his fist as the two boys were walking home from school. According to the record, Lemme was making derogatory comments about Rounds' girlfriend. (Tr. of Deposition of Rounds, p. 9). Rounds demanded that Lemme apologize, and when he refused Rounds punched Lemme in the face. (Tr. p. 12). Rounds denied intending to hurt Lemme but claimed instead that he "just wanted him (Lemme) to shut up". (Tr. P. 14). The complaint further alleged that as a result of Rounds' conduct Lemme suffered permanent and disabling injuries which required medical and hospital care.
On January 19, 1995, defendant Tallman filed an answer and on May 2, 1995, defendant Rounds filed a separate answer. On April 21, 1995 appellant filed a motion for summary judgment as to liability only against Rounds, which motion was sustained by the trial court on August 24, 1995.
On April 18, 1996, appellee filed a motion for leave to intervene in the case, which leave was granted on April 25, 1996. On May 24, 1996, appellant dismissed her action against defendant Tallman, reserving and continuing her action against defendant Rounds. On June 24, 1996, by mutual agreement of counsel and with the approval of the trial court, it was agreed that the action against Tallman was settled and dismissed with prejudice. The parties stipulated that Lemme had sustained injuries to his eye as a result of physical contact with Rounds, and that Lemme had sustained damages in the amount of $17,500. It was further agreed that appellee would be permitted to file its intervenor's complaint and that defendant Rounds would not be exposed to personal liability for damages. Rather, the parties agreed the sole issue remaining to be decided was whether or not the conduct of Rounds was covered by the homeowner's insurance policy issued by appellee to appellant. With respect to this issue, the parties agreed to waive a jury trial and submit the issue for determination by the trial court. This agreement among the parties was recorded in a judgment entry of the trial court dated June 24, 1996.
Thereafter, both appellant and appellee submitted written briefs to the trial court on the issue of coverage. Appellee argued that coverage should be denied because the conduct complained of was not an "occurrence" as defined in the policy, and because Rounds' conduct was intentional, and hence excluded from coverage by the policy language. Appellant argued the incident was an "occurrence" for which coverage was required, and that the policy exclusion for expected or intended injury did not apply because Rounds claimed not to have intended to harm Lemme. On April 14, 1997, the trial court issued a judgment entry in favor of appellee determining that the conduct of Rounds was not within the conduct covered by the insuring agreement. It is from this decision that appellant brings this timely appeal.
Appellant brings two assignment of error, the first of which states:
 "THE CONDUCT OF VINCENT ROUNDS IS AN OCCURRENCE COVERED BY THE HOMEOWNER'S INSURANCE POLICY ISSUED BY STATE FARM FIRE AND CASUALTY COMPANY. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD OTHERWISE."
The policy of insurance in effect at the time of the incident contained the following provisions:
"COVERAGE L — PERSONAL LIABILITY
 "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
 "1. pay up to our limit of liability for the damages for which the insured is legally liable; * * *" (Emphasis sic.)
The policy further defines "occurrence" as "an accident, including exposure to conditions, which results in * * * bodily injury". Definitions, 7 (a). Appellant notes the absence of a definition for "accident" in the policy and argues that where a provision in an insurance policy is reasonably susceptible to more than one interpretation, it should be strictly construed against the insurer (citing King v. Nationwide Ins. Co. [1988],35 Ohio St.3d 208).
Relying on Physician's Ins. Co. v. Swanson (1991), 58 Ohio St.3d 189, the essence of appellant's argument is that an intentional act is nonetheless an accident if the harm resulting was not intended, nor substantially certain to occur. Appellant argues that the issue of coverage in this case cannot be determined solely by whether Rounds' conduct was intentional, but must also take into account whether the injury to Lemme was intended or substantially certain to occur. Appellant notes that in his deposition testimony, Rounds stated that he did not intend to injure Lemme. Appellant also suggests that a fourteen-year old boy lacks the maturity to realize that his conduct may injure others (see Appellant's Brief p. 7), and that any analysis of whether the conduct constitutes an "occurrence" must consider Rounds' age, maturity and capacity to understand the consequences of his action. While appellant concedes the conduct was intentional (see Appellant's Brief p. 9) she argues that Rounds did not intend to injure Lemme, nor was it certain that harm would occur.
In response, appellee argues that an accident is an unexpected, unforeseeable event. According to appellee, the term has no technical significance in law, but is to be construed according to its ordinary understanding and common usage (citing Clapper v. Columbia Mfg. Co. [July 11, 1989], Hancock App. No. 5-87-4, unreported). Because the nature of insurance is the transferal and redistribution of risk, appellee argues that an event which is substantially certain to occur cannot be insurable as there is no risk of it not occurring. Because intentional torts are not fortuitous but substantially certain to occur on the part of the tortfeasor, appellee argues that it is violative of Ohio public policy to permit intentional tortfeasors to secure insurance for the damage their conduct results in (citing Gearing v.Nationwide Ins. Co. [1996], 76 Ohio St.3d 34).
While appellee concedes that in some circumstances it may be possible to accidentally punch someone in the face, appellee contends such did not occur in the instant case. According to appellee, because Rounds admits that he intentionally struck Lemme, the harm cannot have been accidental. Rounds was not defending himself, or anyone else, from imminent physical harm so as to justify his use of force, nor, according to appellee, was this a negligent miscalculation of appropriate conduct, but an intentional infliction of harm. Appellee argues that the trial court was correct in concluding that the harm resulting from punching Lemme in the face in order to get him to shut up was not accidental.
By waiving a jury trial the parties to the case permitted the trial court to make both findings of fact and of law. The record indicates that the trial court had at its disposal the briefs of the parties, the policy itself, and a transcript of the deposition testimony of Rounds. A reviewing court will not disturb a trial court's findings of fact where the record contains competent credible evidence to support such findings.Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 52. By contrast, an appellate court need not defer to the judgment of a trial court where the determination is purely a question of law. See Id., at 51-52. Unlike determinations of fact which are given great deference, questions of law are reviewed by an appellate court de novo. NationwideMut. Fire Ins. Co. v. Guman Bros. Farm
(1995), 73 Ohio St.3d 107, 108.
Appellant is correct in noting that when a provision in an insurance policy is reasonably susceptible to more than one interpretation it must be strictly construed against the insurer. King, supra, at syllabus. However, the mere absence of a definition for the word "accident" does not make the meaning of the term ambiguous. See Guman, supra, at 108. Rather, a court must give undefined words used in an insurance contract their plain and ordinary meaning. Id.
This court has previously had occasion to discuss the meaning of the term "accident". In City of Toronto v. WestfieldCompanies (Sept. 18, 1995), Jefferson App. No. 94-J-46, unreported, we noted that "an 'accident' is an event preceding from an unexpected happening or unknown cause without design and not in the usual course of things" (citing 58 Ohio Jurisprudence 3d 263-64, Insurance, Section 787). This understanding comports with both the plain and ordinary usage of the word in everyday affairs, and with prior pronouncements of the courts of Ohio. See also Gearing, supra, at 38 ("inherent in a policy's definition of 'occurrence' is the concept of an incident of an accidental, as opposed to anintentional nature.") (emphasis sic.); Randolfv. Grange Mut. Cas. Co. (1979), 57 Ohio St.2d 25, 29 ("the word 'occurrence', defined as 'an accident,' was intended to mean just that — an unexpected, unforeseeable event."). Certainly the record in this case contains competent, credible evidence from which the trial court could have concluded that there was nothing accidental about the manner in which Rounds struck Lemme.
However, appellant argues, relying on Swanson, supra, that in determining whether Rounds' conduct was accidental the trial court should also have considered whether the injury itself was intended or substantially certain to occur. In Swanson the Ohio Supreme Court established for Ohio what is undoubtedly now the majority rule in most jurisdictions; that in order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended. Swanson, supra, at syllabus.
Although the provision at issue in this assignment of error is not an express exclusion of expected or intentional injuries, the Swanson court found no reason to distinguish the effect of such a provision from an exclusion based on a definition of "occurrence", as is the case here. As such, much of our reasoning with regard to the provision seeking to deny coverage based on the definition of "occurrence" will be equally applicable to our discussion of the express exclusion treated in appellant's second assignment of error.
At issue then is whether the trial court erred in finding that Rounds intended the injury to Lemme despite the fact that he intentionally struck him. Swanson involved an insured who intentionally fired a BB-gun from a distance of seventy to one-hundred feet away at a sign positioned ten to fifteen feet from a group of teenagers, one of whom was struck in the eye by a BB. The trial court found that the insured had not intended to injure the victim and that such injury was not substantially certain to occur. The injury was therefore an accident and within the duty to indemnify of the insurer. Swanson, supra, at 190.
In affirming the trial court, the Ohio Supreme Court relied on Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108. In Gill, the insured had pleaded guilty to the aggravated murder of the victim, an essential element of which was that the predator intended to cause death. Because the victim's death was clearly expected or intended, the insurer was not required to provide coverage. Gill, supra, at 113.
In United Ohio Ins. Co. v. Vanosdol (June 1, 1993), Warren App. No. CA92-08-073, 075, unreported, a case remarkably similar on its facts to the present case, and one relied on by the trial court, the insured, in an attempt to break up an embrace between the victim and the insured's girlfriend, struck the victim in the face causing serious bodily injury. In ruling that the trial court had correctly applied the expected and intended injuries clause to exclude insurance coverage, the appellate court noted that it "simply belies common sense for [the insured] to suggest that he intended to hit [the victim] but did not intend any bodily injury." Vanosdol, supra, at p. 3. Indeed, the court of appeals found as a matter of law that the insured had intended to both strike the victim and to cause him injury. Id.
In the present case, appellant concedes that Rounds intentionally struck Lemme in the face. As the trial court noted in its judgment entry, "[t]here is no legitimate purpose, absent self defense, for the intentional nonconsensual striking of someone in the face with one's fists. The purpose of such an act is to hurt the person punched." Based on the evidence in the record it does not appear that the trial court erred in finding that Rounds intended to cause injury to Lemme.
Appellant makes much of Rounds' deposition testimony in which he denies any intent to injure Lemme. In doing so, appellant appears to overestimate the value of this evidence. In the first instance, the insurer need only show that the injury was intended or expected. Even supposing Rounds could have demonstrated that he intended no injury, a task demanding in and of itself, even appellant does not suggest that Rounds did not expect injury to occur. Secondly, the trial court appears justified in giving very little weight to Rounds' protestations that he did not intend to cause injury. Because it is always in the interest of an insured to establish coverage and avoid policy exclusions, an insured's self-serving statements denying intent to injure are often "of negligible value in demonstrating intent or expectation." W. Res. Mut. Ins. Co.v. Campbell (1996), 111 Ohio App.3d 537, 541. As the Ohio Supreme Court has previously noted "where an intentional act is substantially certain to cause injury, determination of an insured's subjective intent, or lack of subjective intent, is not conclusive on the issue of coverage." Gearing, supra, at 39. In view of this reasoning, the trial court does not appear to have erred in attaching more weight to the circumstances surrounding the conduct, and the conduct itself, rather than Rounds' statements of denial made after the fact.
Nothing in the record indicates that Rounds in any way lacked the capacity to understand that striking Lemme would result in injury. In his deposition testimony Rounds states that at the time of the incident he was a fourteen-year old eighth grader carrying a 'C' average at school. If Rounds was suffering from a mental incapacity of some kind, the burden of coming forth with such evidence was with appellant and the record indicates no such burden was met. The record contains competent, credible evidence from which the trial court could have found that an eighth grader, even one with a 'C' average in school, understood only too well that punching another boy in the face was likely to lead to injury.
Because the trial court did not err in concluding that Rounds' conduct was not accidental, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE CONDUCT OF VINCENT ROUNDS IS NOT EXCLUDED UNDER THE 'INTENTIONAL ACTS' EXCLUSION IN THE-HOMEOWNER'S INSURANCE POLICY ISSUED BY DEFENDANT-APPELLEE STATE FARM FIRE AND CASUALTY COMPANY. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT HELD OTHERWISE."
The policy issued by appellee contains an exclusion which reads in pertinent part:
 "1. COVERAGE L (Personal Liability) * * * [does] not apply to:
 "a. bodily injury or property damage:
 "(1) which is either expected or intended by an insured; or
 "(2) to any person or property which is the result of willful and malicious acts of an insured;" (Emphasis sic.)
Appellant argues that the trial court erred in finding this exclusion applicable to the conduct of defendant Rounds. Appellant again urges this court to construe any ambiguities in the policy in favor of the insured and, relying onSwanson, supra, notes that to avoid coverage based on the exclusion in question the insurer must demonstrate that the injury itself was expected or intended, not merely that the act was intentional.
Appellant then points to the deposition testimony of defendant Rounds in which the latter states that he did not intend to harm Lemme, and again suggests that the fourteen-year old Rounds lacked the capacity to appreciate that his intentional striking of Lemme would result in injury.
Finally, appellant argues that Rounds' conduct was not willful and malicious as defined in Part 1 (a) (2) of the Exclusion, supra, as willful conduct requires a finding of intent, purpose and design to injure (citing Gladon v. GreaterCleveland Regional Transit Auth. [1996], 75 Ohio St.3d 312). According to appellant, because Rounds did not intend to injure Lemme, the conduct of Rounds cannot be characterized as willful and malicious, and, as such, Exclusion 1 (a) (2) is not applicable.
In response, appellee argues that the trial court correctly found that by intentionally punching Lemme in the face, Rounds intended harm, and injury was substantially likely to occur. Appellee notes that an actor is presumed to intend the natural and probable consequences of his acts. Appellee cites several cases in which the subjective state of mind of the insured tortfeasor has been discounted in favor of examining the circumstances surrounding the insured's conduct, and points to cases in which intent to harm has been inferred as a matter of law from inherently harmful conduct. Appellee notes that an insured always has an interest in self-serving statements of denial in order to establish coverage, and suggests this case is no exception. Hence, notwithstanding Rounds' denial of an intent to injure Lemme, appellee argues that the trial court was correct in concluding that Lemme's injury was expected or intended.
Appellee also takes exception to appellant's suggestion that Rounds lacked the capacity to understand that his intentional conduct would cause harm or injury, arguing instead that nothing in the record suggests fourteen-year old boys in general, or Rounds in particular, cannot understand that punching someone in the face is substantially certain to cause harm. Appellee notes that the burden of demonstrating the incapacity of Rounds rested on appellant, and that no evidence to support the claim was presented to the trial court.
Finally, with regard to appellant's claim that Rounds' conduct was not willful or malicious, appellee notes that the policy language requires only that the act be willful and malicious, and that an intent to cause harm is not required for the exclusion to apply. Although the policy does not define willful and malicious, appellee urges the application of a plain and ordinary meaning. Appellee argues that willful is understood to mean something done deliberately or intentionally (citing Webster's New Universal Unabridged Dictionary [2d Ed. 1983]), and malicious conduct is that which is injurious to another in the absence of sufficient care (citing 88 Ohio Jurisprudence 3d, Torts, Section 1). Hence, according to appellee, because Rounds deliberately punched Lemme in the face the trial court correctly found the conduct was both willful and malicious.
As already noted, much of our analysis with regard to appellant's first assignment of error applies to our discussion of the present assignment. The insureds in Swanson, supra, had two policies in effect at the time of the incident; one issued by the Physician Insurance Company of Ohio (PICO) and the other issued by Cincinnati Insurance Company (Cincinnati). PICO sought to avoid coverage under a provision stating in pertinent part that coverage did not apply "to bodily injury or property damage: (a) which is expected or intended by the insured." Cincinnati sought to avoid coverage by arguing that the incident did not fall within the policy definition of personal injury, defined to be "bodily harm to others caused by an accident". The Ohio Supreme Court noted that both provisions had the same effect, viz., to preclude coverage for intentional or expected injuries caused by the insured. The Court went on to note:
 "The difference is that one policy achieves this result by way of an express exclusion for such injuries (PICO), whereas the other policy does so byway of definition and an exclusion (Cincinnati). Since the effect of both policies is the same, we will treat the respective policy provisions in like manner." Swanson, supra, at 191
This reasoning is appropriate to the present case. In its first assignment of error, appellant's argument centers around the definition of "accident". In the second assignment of error, the focus is on the express exclusion for intended or expected injuries. However the language is couched, the issue is the same; whether Rounds' conduct was an accident or whether it was intended or expected to cause injury to Lemme. As we have already noted, the record contains competent, credible evidence from which the trial court could have found that Rounds' striking of Lemme was no accident or, phrased alternatively, was intended or expected.
With regards appellant's claim that Rounds' conduct was not willful and malicious, we note that the policy excludes behavior that is intended or expected or willful and malicious; the two are phrased in the alternative. Even assuming,arguendo, that the harm to Lemme was not expected or intended, appellee could avoid coverage for "bodily injury * * * to any person * * * which is the result of willful and malicious acts of an insured". See Policy, Sec. II Exclusions, 1 (A) (2). As appellee correctly notes, it is the act of the insured that must be willful and malicious, not the harm to the victim. We need not provide a technical, legal definition for willful and malicious, but rather, applying a plain and ordinary meaning it seems to us difficult to imagine a more apposite example of a willful and malicious act than that of intentionally punching someone in the face in order to get them to "shut up". Indeed, the trial court found that the act was malicious as a matter of law, a determination we do not disagree with.
Appellant's second assignment of error is without merit.
The decision of the trial court is hereby affirmed.
Cox, J., concurs
Waite, J., concurs
APPROVED:
 __________________ Gene Donofrio Presiding Judge